UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CAROL DIVIS, BRIAN SIROTA and KATHLENE SCHEFFERS, CHRISTIE OSS, ANTONIO FUSCO individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br>v.<br><br>GENERAL MOTORS LLC; and DOES 1 through 25, inclusive,<br><br>      Defendants. | CASE NO. |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

## <u>TABLE OF CONTENTS</u>

I.  NATURE OF THE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.  THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    A.  Plaintiff CAROL DIVIS (Pennsylvania Plaintiff) . . . . . . . . . . . 14

    B.  Plaintiff BRIAN SIROTA (Florida Plaintiff) . . . . . . . . . . . . . . . 17

    C.  Plaintiff KATHLENE SCHEFFERS (Michigan Plaintiff) . . . . . 20

    D.  Plaintiff CHRISTIE OSS (Georgia Plaintiff) . . . . . . . . . . . . . . . 28

    E.  Plaintiff ANTONIO FUSCO (New York Plaintiff) . . . . . . . . . . 32

    F.  Defendant GENERAL MOTORS LLC . . . . . . . . . . . . . . . . . . . . 35

IV.  TOLLING OF THE STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . 36

    A.  Discovery Rule Tolling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    B.  Fraudulent Concealment Tolling . . . . . . . . . . . . . . . . . . . . . . . . 38

    C.  Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

V.  CLASS ACTION ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

    A.  Numerosity - Fed. R. Civ. Pro. 23(a)(1) . . . . . . . . . . . . . . . . . . . 45

    B.  Commonality and Predominance - Fed. R. Civ. Pro. 23(a)(2) and

        23 (b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

C.    Typicality - Fed. R. Civ. Pro. 23(a)(3). . . . . . . . . . . . . . . . . . . . . . . 47

D.    Adequacy of Representation - Fed. R. Civ. Pro. 23(a)(4). . . . . . 48

E.    Superiority - Fed. R. Civ. Pro. 23(b)(3). . . . . . . . . . . . . . . . . . . . 49

VI.   FIRST CAUSE OF ACTION

(Violation of Pennsylvania Unfair Trade Practices and Consumer
Protection Law) [73 P.S. §201-1 to §201-903, *et seq.*]. . . . . . . . . . . . . . 50

VII.  SECOND CAUSE OF ACTION

(Breach of Warranty) [13 Pa.C.S. §2313, *et seq.*]. . . . . . . . . . . . . . . . . . 56

VIII. THIRD CAUSE OF ACTION

(Violation of Florida Deceptive and Unfair Trade Practices Act
("FDUTPA")) [Fla. Stat. §501.201, *et seq.*]. . . . . . . . . . . . . . . . . . . . . . . 57

IX.   FOURTH CAUSE OF ACTION

(Violation of Michigan Consumer Protection Act ("MCPA")) [Michigan
Compiled Laws §455.903, *et seq.*]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

X.    FIFTH CAUSE OF ACTION

(Breach of Express Warranty) [Michigan Compiled Laws §440.2607, *et
seq.*]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

XI.    SIXTH CAUSE OF ACTION

(Violation of Georgia Uniform Deceptive Trade Practices Act,

O.C.G.A. §§10-1-370 to 10-1-375). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

XII.    SEVENTH CAUSE OF ACTION

(Breach of Express Warranty)

[Georgia Code Ann. §11-2-313, *et seq.*]. . . . . . . . . . . . . . . . . . . . . . . . . . 80

XIII.    EIGHTH CAUSE OF ACTION

(Violation of New York Deceptive Practices Act, New York General

Business Law §349). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

XIV.    NINTH CAUSE OF ACTION

(Breach of Warranty; NYUCC §§2-101, *et seq.*). . . . . . . . . . . . . . . . . . . 91

XV.    TENTH CAUSE OF ACTION

(Violation of The Magnuson-Moss Warranty Act) [15 U.S.C. §2301, *et*

*seq.*]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97

XVI.    ELEVENTH CAUSE OF ACTION

(Unjust Enrichment). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 103

XVII.    TWELFTH CAUSE OF ACTION

(Declaratory Relief). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104

XVIII.      PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106

XIX.        DEMAND FOR JURY TRIAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110

Plaintiffs CAROL DIVIS, BRIAN SIROTA, KATHLENE SCHEFFERS, CHRISTIE OSS, and ANTONIO FUSCO (hereinafter collectively "Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to themselves, and on information and belief as to all other matters alleged herein, bring this Class Action Complaint against Defendant GENERAL MOTORS LLC ("GM" or "Defendant"), erroneously named previously as "GENERAL MOTORS COMPANY" and allege as follows.

## I.

## <u>NATURE OF THE ACTION</u>

1. The sunroofs of 2010-2013 model year Cadillac SRX vehicles (the "Class Vehicles") leak and water intrudes into the passenger compartment of the vehicles because of a defect in the design and/or manufacture of the sunroofs and their component parts (hereinafter "Leaking Sunroof Defect"). The water intrusion causes water damage to the interior of Class Vehicles and creates safety concerns by damaging wiring and electrical modules resulting in the Class Vehicles and their component parts not operating properly.

1

2.      Defendant has long known about the Leaking Sunroof Defect and that the Class Vehicles are defective in their design and/or manufacture. Despite this knowledge Defendant has failed to disclose the existence of this defect to Plaintiffs, members of the class, and the public.  Nor has Defendant issued a recall to inspect and repair the Class Vehicles, or offered to reimburse Class Vehicle owners for costs incurred to identify and repair the Leaking Sunroof Defect and damages caused by the defect.

3.      Instead, as early as July 2011, Defendant initiated a limited and non-publicized Customer Satisfaction program and internal service and repair bulletins which provided inadequate relief for only some of the affected Class Vehicles located in certain geographic areas of the United States and Canada, and only for a certain period of time.  The limited Customer Satisfaction program continues to mislead owners of Class Vehicle because vehicles not covered by the Customer Satisfaction program were lead to believe their vehicles were not affected by the Leaking Sunroof Defect, when they were.

4.      Plaintiffs bring this action for themselves and on behalf of all persons wherever located in the United States who purchased or leased model years 2010-2013 Cadillac SRX vehicles with defective sunroof design,

materials, and/or workmanship including but not limited to the sunroof drains and/or hoses (hereinafter the "Class Vehicles") which were manufactured, distributed, and/or sold by Defendant GENERAL MOTORS, through its Cadillac Motor Car Division, related subsidiaries and/or affiliates.

5.     The Class Vehicles were designed and/or manufactured with defective sunroof seals and/or sunroof drains which causes outside water to enter into the passenger compartment of the vehicle.  The intrusion of water into the passenger compartment results in foreseeable and anticipated property damage to Class Vehicles including wet and/or moldy carpet, damage to interior components, including wiring, electronic modules, and the sound deadener requiring repair or replacement of the components parts and/or cleaning of vehicles caused by the Leaking Sunroof Defect.

6.     Upon information and belief, Defendant has denied warranty coverage for Class Vehicles with the Leaking Sunroof Defect, including providing warranty coverage for the costs associated with repairing and/or replacing component parts and/or necessary cleaning of vehicles caused by the Leaking Sunroof Defect.

3

7.     Plaintiffs are informed, believe and thereon allege on newer Cadillac SRX models (2014 - newer), Defendant has redesigned and/or corrected the Leaking Sunroof Defect; thus it may be reasonably inferred the design, materials, component parts, and/or manufacture of the sunroofs on the 2010-2013 model year vehicles is/are defective in material and/or workmanship and not suitable in the subject Class Vehicles.

8.     Plaintiffs allege that for the Class Vehicles, Defendant provided an express 48-month (4-year), 50,000 mile Bumper-to-Bumper Limited Warranty with no deductible.  Plaintiffs allege the "Bumper-to-Bumper Limited Warranty" covers vehicles registered in the U.S. and Canada from the date the vehicle is first delivered until it reaches 4 years or 50,000 miles (whichever occurs first).  Defendant's express warranty covers the vehicle from bumper to bumper on any vehicle defect related to materials or workmanship.  Attached hereto as Exhibit "1" is Cadillac's 2010 Bumper-to-Bumper Limited Warranty.

9.     Plaintiffs allege that for Cadillac SRX model years 2011-2013 Class Vehicles Defendant also provided an express warranty which Defendant calls "Cadillac Shield."  Defendant makes the following advertisement and/or

representation about its Cadillac Shield express warranty:

> "At Cadillac, we believe our owners deserve it all. That's why every 2011 or newer vehicle is backed by Cadillac Shield, the most comprehensive suite of owner benefits by any luxury automotive brand in the world. From innovations like Remote Vehicle Diagnostics and advanced mobile apps to our Premium Care Maintenance program, Cadillac Shield gives luxury owners everything they need."

> Attached hereto as Exhibit "2" is Cadillac's Cadillac Shield warranty.

10.     The express "Bumper-to-Bumper Limited Warranty" offered by Defendant and its "Cadillac Shield" warranty constitute contracts between Defendant and the consumers, including Plaintiffs and the class members, who purchased or leased Class Vehicles. Privity thus exists between Plaintiffs and the class members on the one hand and Defendant on the other with respect to Defendant's express warranties.

11.     In or about August 30, 2013, within the initial Bumper-to-Bumper Limited Warranty period of the Class Vehicles, Defendant issued General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013)," which provides that "GM bulletins are intended for use by professional technicians, NOT a 'do-it-yourselfer'." Attached as Exhibit "3" to this Class Action

Complaint is a copy of Document ID: 3610923, #PI0044D.   Defendant therefore intended that Class Vehicles with the Leaking Sunroof Defect are not to be repaired and/or replaced by anyone other than a professional technician.    According to Document ID: 3610923, #PI0044D the "Condition/Concern" is that "Some customers may comment on seeing a water leak in the driver or front passenger floor area and/or finding the front carpet wet."  Defendant identified "the most common causes of this concern are: • There may be a void in the cowl seam sealer, in the corners below the sunroof drain hose grommets. • The sunroof front drain hose grommet(s) may not be connected or fully sealed in the cowl panel or at the sunroof frame spigot. • The sunroof front drain hoses are mis-routed or are too short, and display a higher level of tension.  This higher tension may tend to cause a future disconnect or unseating of the grommet."   Defendant stated in Document ID: 3610923, #PI0044D that "This PI has been revised to update the Condition/Concern, Recommendation/Instructions sections and update the Warranty Information with the Global Labor Code (GLC). Please discard PI0044C."  Defendant also identified in Document ID: 3610923, #PI0044D the labor operation and parts necessary to repair the Leaking Sunroof defect

under warranty.  *See*, Exhibit "3" at pg 7.

12.     In or about September 2013, within the initial Bumper-to-Bumper Limited Warranty period of the Class Vehicles, Defendant issued Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, which provided information relating to the Leaking Sunroof defect.  Attached hereto as Exhibit "4" is a copy of SB-10052823-4367, Bulletin No. PI0044D.  According to Service Bulletin PI0044D the "Condition/Concern" is that "Some customers may comment on seeing a water leak in the driver or front passenger floor area and/or finding the front carpet wet."   Defendant identified "the most common causes of this concern are: • There may be a void in the cowl seam sealer, in the corners below the sunroof drain hose grommets. • The sunroof front drain hose grommet(s) may not be connected or fully sealed in the cowl panel or at the sunroof frame spigot. • The sunroof front drain hoses are mis-routed or are too short, and display a higher level of tension.  This higher tension may tend to cause a future disconnect or unseating of the grommet."  Defendant stated in Service Bulletin No. PI0044D that "This PI has been revised to update the Condition/Concern, Recommendation/Instructions sections and update the Warranty Information with the Global Labor Code

(GLC). Please discard PI0044C."  Defendant also identified in Service Bulletin No. PI0044D the labor operation and parts necessary to repair the Leaking Sunroof defect under warranty.  *See*, Exhibit "4" at pg 6.

13.     In or about January 14, 2015, Defendant issued Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U)."  This Customer Satisfaction program was stated to be in effect until January 31, 2017, and covered vehicles located in the states of Florida (Plaintiff SIROTA's vehicle), Pennsylvania (Plaintiff DIVIS' vehicle), and New York.  This Customer Satisfaction program specifically underlined excluded vehicles located in Michigan (Plaintiff SCHEFFERS' vehicle), and Georgia (Plaintiff OSS's vehicle).  *See*, Exhibit "5" to this complaint.

14.     According to Defendant's documents and records as early as August 2013 and during the original express warranty period, Defendant identified the nature and cause of the Leaking Sunroof defect in the Class Vehicles and the recommended repair and/or correction.

8

15. Based on its own Service Bulletins and Customer Satisfaction programs, Defendant had actual knowledge and notice, or in the exercise of reasonable care should have known, during the warranty period covering the Class Vehicles of the existence and nature of and correction for the Leaking Sunroof Defect.

16. The Leaking Sunroof Defect inhibits Plaintiffs' and the class members' enjoyment and use of their vehicles as well as the proper and safe use of their vehicle's sunroof by failing to keep water out of the interior passenger compartment of the Class Vehicles. The Leaking Sunroof Defect also presents a safety hazard in that it can and does result in damage to the vehicle's interior components, including wiring and electronic modules.

17. Notwithstanding Defendant's actual or constructive knowledge of the Leaking Sunroof Defect during the warranty period Defendant required Plaintiffs and the class members to pay from their own pockets the costs for parts and labor to repair and/or replace component parts associated with the Leaking Sunroof Defect as well as for cleaning and/or sanitization of the vehicle's carpet and any other repairs caused by the Leaking Sunroof Defect. As a result of Defendant's alleged misconduct Plaintiffs and the class

members were harmed and suffered actual harm and damages in that they parted with their own money and/or suffered damage to their vehicles.

18.     Plaintiffs and the class members continue to be harmed and suffer actual damages in that Class Vehicles have manifested, and continue to manifest, the Leaking Sunroof Defect.  Defendant has not provided Plaintiffs and the class members with a permanent remedy for the Leaking Sunroof Defect, and indeed Defendant refused and continues to refuse to repair the Leaking Sunroof Defect and has excluded Plaintiffs and the class members from the limited Customer Satisfaction program and warranty repairs for the Leaking Sunroof Defect provided therein.  Plaintiffs and the class members have incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to repairing, replacing and/or cleaning vehicles caused by the Leaking Sunroof Defect.

19.     Defendant's decision to exclude specifically the Class Vehicles from Defendant's express warranties as well as Defendant's limited Customer Satisfaction Program constitutes a breach of its express warranties.

20.     Defendant's decision to deny warranty coverage to the Class

10

Vehicles for costs of parts and/or labor associated with repairing, replacing and/or cleaning vehicles with the Leaking Sunroof Defect constitutes a breach of its express warranty.

21.  Plaintiffs allege Defendant made a conscious and purposeful decision to deny and/or refuse to provide warranty coverage for the Leaking Sunroof Defect and instead forced consumers to pay from their own pockets the costs for parts and/or labor to repair, replace the Leaking Sunroof Defect and/or clean their vehicles.  Plaintiffs allege Defendant engaged in these acts and conduct for the purpose of saving its own money and for its own selfish financial and economic gain and to the financial detriment of its own customers and despite its actual knowledge of the existence of the Leaking Sunroof Defect.  Plaintiffs allege Defendant's conduct and actions as herein alleged were done with a knowing, conscious, purposeful, willful, malicious and/or oppressive disregard for the rights and/or safety of Plaintiffs and the class members.

/ / /

/ / /

22.     Plaintiffs allege Defendant has failed to take reasonable measures to communicate to owners of Class Vehicles the existence of the Leaking Sunroof Defect and the damage it foreseeably causes despite the reasonable expectation of consumers that a properly working and properly designed and/or manufactured sunroof would not cause water to intrude into their vehicles.

23.     Given the Leaking Sunroof Defect is known or anticipated by Defendant to present a safety hazard to Class Vehicles in that it can result in damage to the vehicle's interior components, including wiring and electronic modules, a recall should have been issued for the Class Vehicles and Class Vehicles should not have been excluded from the Customer Satisfaction program.

24.     Plaintiffs allege the reasonable consumer would consider material information about the Leaking Sunroof Defect which results in water intruding into the passenger compartment of consumer's vehicle and causes wet/saturated carpet, wet/saturated padding between the firewall and instrument panel assembly, and which can result in a safety risk from damage to the vehicle's interior components, including wiring and electronic modules.

12

25.     Plaintiffs are informed and allege Defendant delivered the following number of 2010-2013 Cadillac SRX vehicles with the Leaking Sunroof Defect:

| Model Year: | Number of Cadillac SRX Vehicles: |
|---|---|
| 2010 | 51,094 |
| 2011 | 56,905 |
| 2012 | 57,485 |
| 2013 | 56,776 |
| Total: | 222,260 |

26.     Defendant GM owns, operates and/or manages Cadillac Motor Car Division which is a division of Defendant GENERAL MOTORS LLC.

## II.

## JURISDICTION AND VENUE

27.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C.§1332(d) because: (a) this action is brought as a proposed class action under Fed. R. Civ. Pro., Rule 23 (a) and (b) because the proposed Class(es) include(s) more than 100 members; Fed. R. Civ. Pro., Rule 23 (c) because many of the proposed Class members are citizens of states which are diverse from Defendant's citizenship; and Fed. R. Civ. Pro., Rule 23 (d) because the matter in controversy exceeds $5,000,000.00 (Five Million Dollars), exclusive of interest and costs.

28.    This court has jurisdiction in this action because this action involves Defendant's "Bumper-to-Bumper" express warranty which is uniform and applies to all "vehicles registered in the United States" (and Canada).  See, Ex. "1" attached to this complaint.

29.    Venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) because Defendant GM's principal place of business is located in Detroit, Michigan.

### III.

### THE PARTIES

### A.    Plaintiff CAROL DIVIS (Pennsylvania Plaintiff)

30.    Plaintiff CAROL DIVIS ("DIVIS") resides in Newtown Square, Pennsylvania.  DIVIS owns a model year 2010 Cadillac SRX which was purchased new and which was placed into service by Defendant in or about 2009.

31.    DIVIS's vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Defendant and bears the Vehicle Identification No. 3GYFNDEYXAS523550.

32.     DIVIS purchased her Cadillac SRX vehicle primarily for her personal, family, and household use.

33.     DIVIS's vehicle first experienced the Leaking Sunroof Defect in April 2014 when DIVIS got into her vehicle and found that water had intruded into the interior passenger compartment of her vehicle. DIVIS's vehicle was repaired by Defendant under warranty.

34.     DIVIS experienced the Leaking Sunroof Defect a second time in or about June 2017 when she noticed her seatbelt felt damp and the carpet behind the driver's seat was wet. In addition, DIVIS noticed the rear hatch was inoperable, there was condensation on the interior of the windows, the vehicle kept stalling when started and the electrical components under the driver's seat were compromised.

35.     DIVIS took her vehicle to Fred Beans Cadillac in Doylestown, Pennsylvania about the damage to her vehicle and the dealership opened a repair order. Upon inspection of the vehicle it was discovered the rear ends of the sunroof drain hoses had failed resulting in water intrusion into the interior of the vehicle.

15

36.     DIVIS alleges the damage to her vehicle and the necessary repairs were caused by the Leaking Sunroof Defect.  DIVIS was told the repairs and costs to repair the damage to her vehicle were not covered under warranty or the limited Customer Satisfaction program.  DIVIS was charged and paid $1,300.00 from her own pocket to repair the damage caused by the Leaking Sunroof Defect and has thus incurred actual harm and damages as a result of the Leaking Sunroof Defect.

37.     DIVIS alleges had she been advised, informed, told or otherwise made aware by Defendant of the existence of the Leaking Sunroof Defect and the potential damage to the vehicle the defect caused, as well as the loss of enjoyment and use of her vehicle, DIVIS would have taken her vehicle for the repairs and/or corrections identified by Defendant in its "General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013)" as well as Defendant's Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, and Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U)"

and DIVIS would not have suffered the harms, losses and/or damages she did when her sunroof leaked in June 2017.

## B.   Plaintiff BRIAN SIROTA (Florida Plaintiff)

38.    Plaintiff BRIAN SIROTA ("SIROTA") resides in Palmetto, Florida. SIROTA owns a model year 2010 Cadillac SRX which he purchased used in August 2016, from Conley Buick GMC in Bradenton, Florida.

39.    SIROTA's vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Defendant and bears the Vehicle Identification No. 3GYFNAEY2AS629263.

40.    SIROTA purchased his Cadillac SRX vehicle primarily for his personal, family, and household use.

41.    SIROTA experienced the Leaking Sunroof Defect in or about July 2017 when he noticed water intrusion into the rear of the vehicle and the floor of the passenger compartment of the vehicle resulting in damage to the interior of the vehicle including the fact the vehicle smelled of mold.  In addition, SIROTA's vehicle experienced electrical problems from the water intrusion in that the rear hatch was inoperable.

42.    SIROTA took his SRX vehicle to Sunset Cadillac of Bradenton, Florida for inspection and repairs.  Upon inspection of the vehicle SIROTA was told the damage was caused by the Leaking Sunroof Defect and that it was a "common problem" with SRX vehicles. SIROTA was told by the repair shop that he might be able to receive assistance for the repairs by going through Defendant.  SIROTA followed the recommendation and contacted Defendant about the damages cause to his vehicle by the Leaking Sunroof Defect.  Defendant, however, refused to cover any of the charges associated with repairs of the Leaking Sunroof Defect on SIROTA's vehicle leaving SIROTA to pay for the repairs out of his ow pocket.

43.    SIROTA was charged $993.12 for the cost of repairing the damages caused by the Leaking Sunroof Defect.  SIROTA submitted a claim with his insurance carrier, who covered a portion of the cost of repairs, but SIROTA was still required to pay a $200.00 deductible out of his own pocket.  SIROTA has therefore suffered actual harm and damages as a result of the Leaking Sunroof Defect.

/ / /

/ / /

44.   SIROTA alleges the damage to his vehicle and the necessary repairs were caused by the Leaking Sunroof Defect.  Defendant refused to cover the repairs and costs to repair the damage to SIROTA's vehicle under warranty or the limited Customer Satisfaction program.

45.   SIROTA alleges had he been advised, informed, told or otherwise made aware of the existence of the Leaking Sunroof Defect and the potential damage to the vehicle the defect caused, as well as the loss of enjoyment and use of his vehicle as a result of the defect, SIROTA would not have purchased the vehicle or he would have requested prior to purchasing the vehicle that it be inspected and/or repaired for the Leaking Sunroof Defect and/or corrections identified by Defendant in its Customer Service programs and SIROTA would not have suffered the harms, losses and/or damages he did when he experienced the Leaking Sunroof defect in July 2017.

46.   SIROTA alleges his vehicle was covered by the Customer Satisfaction program issued by Defendant on January 15, 2015 (Exhibit "5"; Document ID 4060832) because the program was in effect at the time SIROTA purchased his vehicle and Defendant knew SIROTA's vehicle was one that was subject to the Leaking Sunroof Defect.

19

### C.   **Plaintiff KATHLENE SCHEFFERS (Michigan Plaintiff)**

47.   Plaintiff KATHLENE SCHEFFERS ("SCHEFFERS") resides in Kalamazoo, Michigan. SCHEFFERS owns a model year 2010 Cadillac SRX which she purchased new in 2010 from Cole Automotive Group in Portage, Michigan.

48.   SCHEFFERS' vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Defendant and bears the Vehicle Identification No. 3GYFNAEY6AS639777.  Plaintiff's vehicle was delivered by Defendant in or about February 2010, and first placed into use in or about May 2010.

49.   SCHEFFERS purchased her Cadillac SRX vehicle primarily for her personal, family, and household use.

50.   SCHEFFERS experienced the Leaking Sunroof Defect in or about October 2017 when she noticed a significant amount of water had intruded into the passenger compartment of her vehicle resulting in drenching of the front passenger side floor.  Approximately 4 - 6 weeks prior SCHEFFERS had noticed a damp/musty odor in the vehicle on several occasions but there not a visible amount of water on the floor or noticeable in the vehicle.

51.     On or about October 13, 2017, SCHEFFERS took her SRX vehicle to Cole Century Buick, Pontiac, GMC, Cadillac in Portage, Michigan for inspection and repairs.  Upon inspection of the vehicle SCHEFFERS was told the damage was caused by the Leaking Sunroof Defect.  The description of problem as reported was "Water coming in from under dash where wiper trans was replaced."  The repair technician noted the inspection and repair included "CK OUT and found sunroof drain tubes shrunk and had pulled out at RT FT.  Replaced both FT drain tubes."  This is precisely the nature, cause and repair of the Leaking Sunroof Defect noted in Defendant's  Customer Satisfaction Bulletins and programs contained in General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013) (see, Exhibit "3" to this complaint), and again in September 2013, in Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D (see, Exhibit "4" to this complaint), and again with Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015) (see, Exhibit "5" to this complaint).

52.     SCHEFFERS alleges the damage to her vehicle and the necessary repairs were caused by the Leaking Sunroof Defect.

53. SCHEFFERS was charged $554.08, to repair the Leaking Sunroof Defect, and paid that amount from her own pocket to repair the damage caused by the Leaking Sunroof Defect and has thus incurred actual harm and damages as a result of the Leaking Sunroof Defect. SCHEFFERS was told by the service technician that Defendant GENERAL MOTORS would not cover the cost of repairs because the repair was performed outside the timeframe of the Customer Satisfaction bulletin #14225, issued January 14, 2015.

54. Prior to experiencing the water intrusion in October 2017, on or about September 7, 2017, SCHEFFERS experienced that the windshield wipers in her SRX vehicle were not working properly and had stopped working. SCHEFFERS took her vehicle to Cole Century for inspection and repair. SCHEFFERS reported to the service advisors at Cole Century that the front windshield wipers were not working properly and that the rear wiper would cycle un-commanded. After inspection SCHEFFERS was told that, with regard to the front windshield wipers, an electrical system repair was needed and the wiper transmission needed replacing. With regard to the rear wiper issue, SCHEFFERS was informed the service technician was unable to duplicate the concern consistently to be able to diagnose the problem. No

repairs to the rear wipers were performed.  SCHEFFERS thereon alleges, to

the best of her knowledge, the electrical malfunction of the windshield wiper

transmission motor was related to and/or caused by the Leaking Sunroof

Defect.

55.    Prior to the October 2017 water intrusion, and prior to the

September 2017 windshield wiper transmission issue, SCHEFFERS' vehicle

had been brought in for inspection and/or repairs, including "multi-point

inspections," on numerous occasions between August 2013 (when Defendant

issued General Motors Document ID: 3610923, #PI0044D "Water Leak at

Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013)

(see, Exhibit "3" to this complaint) and September and October 2017.  At no

time during any of the prior inspections, repairs, or "multi-point inspections"

was SCHEFFERS informed, advised, or otherwise given notice that there was

a recognized and documented Leaking Sunroof Defect in 2010-2012 Cadillac

SRX model year vehicles which included hers.

56.    SCHEFFERS alleges that, prior to her October 2017 experience

with the Leaking Sunroof Defect, and unbeknownst to her, a "Manual Close"

was noted in the "Required Field Actions" described as "Customer

23

Satisfaction Program" "Number 14225" "Sunroof Drain Hose Leaks" with release date 1/19/2015, in the maintenance history for SCHEFFERS' vehicle. SCHEFFERS alleges that at no time has she been told, advised or otherwise informed that any inspection, repairs or other action had been taken with regard to Customer Satisfaction Program #14225 in relation to the Leaking Sunroof Defect and her vehicle. SCHEFFERS further alleges there is no record that, prior to October 2017, any such inspection, repair or other action was taken on her SRX vehicle with regard to the Leaking Sunroof Defect despite Defendant's actual and/or constructive knowledge of the existence of the Leaking Sunroof Defect during the original warranty period and/or during the Customer Satisfaction Programs issued by Defendant in August 2013, September 2013 and again in January 2015, as herein alleged.

57.    By comparison, the inspection history for SCHEFFERS' vehicle indicates that a "Customer Satisfaction" Program Number 10309 relating to "Cadillac SRX Power Steering Fluid Leak" issued on or about November 10, 2010, had been "Closed."  In or about October 4, 2012, while still under the initial "Bumper-to-Bumper" warranty, SCHEFFERS' SRX vehicle was brought in for inspection, service and/or repairs for items including Inspect Front

Fender Inner Panel Access Opening Covers. During the same service visit, the additional service to "10309 - Install Power Steering Gear Outlet Tube Bracket and Conduit" was performed and covered under warranty. SCHEFFERS thereon alleges Defendant, when it wants to, directs Cadillac service centers to perform inspections of vehicles subject to Customer Satisfaction programs and to cover under warranty the costs associated with any inspection and/or repairs at no cost to the customer/consumer.

58.     Plaintiff SCHEFFERS alleges that at no time prior to October 2017 had she been made informed, advised, or otherwise made aware of the existence of the Leaking Sunroof Defect and that her SRX vehicle may be and/or was subjected to the Leaking Sunroof Defect.

59.     SCHEFFERS alleges that at no time after August 2013, when Defendant first issued a Customer Satisfaction program relating to the Leaking Sunroof Defect, did Defendant make SCHEFFERS aware of, advise or otherwise inform and/or disclose to SCHEFFERS the rights and/or remedies available to her and all others similarly situated and/or the obligations of Defendant with regard to inspection and/or repair of the Leaking Sunroof Defect. In so doing, SCHEFFERS alleges Defendant's actions

and conduct caused a probability of confusion or a misunderstanding as to the legal rights, obligations and/or remedies of a party to the transactions relating to inspection and/or repair of the Leaking Sunroof Defect which arose for the first time during the original warranty period and/or during the Customer Satisfaction Programs issued by Defendant in August 2013, September 2013 and again in January 2015, as herein alleged.

60. Moreover, Defendant excluded vehicles located in Michigan from the Customer Satisfaction program set forth in Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U)" and which was stated to be in effect January 31, 2017, despite its knowledge of the Leaking Sunroof Defect in vehicles including that owned by SCHEFFERS. *See*, Exhibit "5" to this complaint. In so doing, SCHEFFERS alleges Defendant's actions and conduct caused a probability of confusion or a misunderstanding as to the legal rights, obligations and/or remedies of a party to the transactions relating to inspection and/or repair of the Leaking Sunroof Defect which arose for the first time during the original warranty period and/or during the

Customer Satisfaction Programs issued by Defendant in August 2013, September 2013 and again in January 2015, as herein alleged.

61.    SCHEFFERS alleges Defendant purposely, willfully, intentionally and/or negligently failed to disclose to SCHEFFERS the existence of the Leaking Sunroof Defect which SCHEFFERS alleges was a material fact to her and all other reasonable consumers and one which could not reasonably have been known by the consumer. SCHEFFERS also, and/or alternatively, alleges that, beginning in August 2013 during the original warranty period, Defendant failed to reveal to SCHEFFERS and all others similarly situated the material fact of the existence of the Leaking Sunroof Defect and in so doing omitted, withheld and/or otherwise concealed from SCHEFFERS and all others similarly situated the existence of the Leaking Sunroof Defect which SCHEFFERS did, and all other reasonable consumers would, consider material.

62.    SCHEFFERS alleges had she been advised, informed, told or otherwise made aware by Defendant of the existence of the Leaking Sunroof Defect and the potential damage to the vehicle the defect caused, as well as the loss of enjoyment and use of her vehicle, SCHEFFERS would have taken

her vehicle for the repairs and/or corrections identified by Defendant in its "General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013)" as well as Defendant's Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, and Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U)" and SCHEFFERS would not have suffered the harms, losses and/or damages she did when her sunroof leaked in October 2017.

### D.    <u>Plaintiff CHRISTIE OSS (Georgia Plaintiff)</u>

63.    At all times relevant to this action Plaintiff CHRISTIE OSS ("OSS") was a resident of McDonough, Georgia. OSS owns a model year 2012 Cadillac SRX which she purchased used in 2014 from Classic Cadillac.

64.    OSS's vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Defendant and bears the Vehicle Identification No. 3GYFNAE39CS521858.

65.     OSS purchased her Cadillac SRX vehicle primarily for personal, family, and household use.

66.     OSS experienced the Leaking Sunroof Defect in or about October 2017 when she noticed a musty, moldy, mildew smell in her vehicle and heard a gurgling water sound.  Shortly after the rear lift gate of OSS's vehicle began to malfunction and would open on its own and would not close.  OSS then noticed a significant amount of water had intruded into the rear cargo compartment of her vehicle.

67.     On or about October 16, 2017, OSS took her SRX vehicle to Classic Cadillac in Atlanta, Georgia, for inspection and repairs.  Upon inspection of the vehicle OSS was told the damage was caused by the Leaking Sunroof Defect.

68.     Defendant GM has refused to cover the cost of repairing the Leaking Sunroof Defect under warranty and is requiring OSS to pay some $499.00 out of her own pocket for the repairs.  OSS, therefore, incurred actual harm and damages as a result of the Leaking Sunroof Defect.

69.     OSS alleges that at no time after August 2013, when Defendant first issued a Customer Satisfaction program relating to the Leaking Sunroof

29

Defect, did Defendant make OSS aware of, advise or otherwise inform and/or disclose to OSS the rights and/or remedies available to her and all others similarly situated and/or the obligations of Defendant with regard to inspection and/or repair of the Leaking Sunroof Defect.  In so doing, OSS alleges Defendant's actions and conduct caused a probability of confusion or a misunderstanding as to the legal rights, obligations and/or remedies of a party to the transactions relating to inspection and/or repair of the Leaking Sunroof Defect which arose for the first time during the original warranty period and/or during the Customer Satisfaction Programs issued by Defendant in August 2013, September 2013 and again in January 2015, as herein alleged.

70.    OSS alleges Defendant purposely, willfully, intentionally and/or negligently failed to disclose to OSS the existence of the Leaking Sunroof Defect which OSS alleges was a material fact to her and all other reasonable consumers and one which could not reasonably have been known by the consumer.  OSS also, and/or alternatively, alleges that, when she purchased the vehicle in November 2014 from Classic Cadillac, during the original warranty period, Defendant failed to reveal to OSS and all others similarly

situated the material fact of the existence of the Leaking Sunroof Defect and in so doing omitted, withheld and/or otherwise concealed from OSS and all others similarly situated the existence of the Leaking Sunroof Defect which OSS did, and all other reasonable consumers would, consider material.

71.   OSS alleges had she been advised, informed, told or otherwise made aware by Defendant of the existence of the Leaking Sunroof Defect and the potential damage to the vehicle the defect caused, as well as the loss of enjoyment and use of her vehicle, OSS would have asked, prior to her purchase, that the vehicle be inspected as repaired as identified by Defendant in its "General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013)" as well as Defendant's Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, and Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U)." OSS would not have suffered the harms, losses and/or damages she did when her sunroof leaked in October 2017.

E.     **Plaintiff ANTONIO FUSCO (New York Plaintiff)**

72.     Plaintiff ANTONIO FUSCO ("FUSCO") resides in Kings Park, New York. FUSCO owns a model year 2013 Cadillac SRX which he purchased new in January 2014 from King O'Rourke Cadillac.

73.     FUSCO's vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Defendant and bears the Vehicle Identification No. 3GYFNGE34DS532772.

74.     FUSCO purchased his Cadillac SRX vehicle primarily for personal, family, and household use.

75.     FUSCO experienced the Leaking Sunroof Defect in or about October 24, 2017 when he noticed the right front and rear floor, and rear cargo compartment filled with water and the rear lift gate of FUSCO's vehicle began to malfunction and would open.

76.     On or about October 24, 2017, FUSCO took his SRX vehicle to King O'Rourke Cadillac in Smithtown, New York for inspection and repairs.  Upon inspection of the vehicle FUSCO was told the damage was caused by the Leaking Sunroof Defect.  Upon inspection of FUSCO's vehicle it was found that the "sun roof drains failed causing interior to fill with water.  Had to

remove complete interior clean and dry replace both front and rear carpets. Replace all drains lift gate module and pump and foam replace."

77.    Defendant GM refused to cover the cost of repairing the Leaking Sunroof Defect under warranty and required FUSCO to pay out of his own pocket a $750.00 "deductible" plus tax of $64.69, for a total of $814.69, for the repairs.  FUSCO, therefore, incurred actual harm and damages as a result of the Leaking Sunroof Defect.

78.    FUSCO alleges that at no time after August 2013, when Defendant first issued a Customer Satisfaction program relating to the Leaking Sunroof Defect, did Defendant make FUSCO aware of, advise or otherwise inform and/or disclose to FUSCO the rights and/or remedies available to him and all others similarly situated and/or the obligations of Defendant with regard to inspection and/or repair of the Leaking Sunroof Defect.  In so doing, FUSCO alleges Defendant's actions and conduct caused a probability of confusion or a misunderstanding as to the legal rights, obligations and/or remedies of a party to the transactions relating to inspection and/or repair of the Leaking Sunroof Defect which arose for the first time during the original warranty period and/or during the Customer Satisfaction Programs issued

by Defendant in August 2013, September 2013 and again in January 2015, as herein alleged.

79.    FUSCO alleges Defendant purposely, willfully, intentionally and/or negligently failed to disclose to FUSCO the existence of the Leaking Sunroof Defect which OSS alleges was a material fact to her and all other reasonable consumers and one which could not reasonably have been known by the consumer.  FUSCO also, and/or alternatively, alleges that, when he purchased the vehicle in January 2014 from King O'Rourke Cadillac, Defendant failed to reveal to FUSCO and all others similarly situated the material fact of the existence of the Leaking Sunroof Defect and in so doing omitted, withheld and/or otherwise concealed from FUSCO and all others similarly situated the existence of the Leaking Sunroof Defect which FUSCO did, and all other reasonable consumers would, consider material.

80.    Had FUSCO been advised, informed, told or otherwise made aware by Defendant of the existence of the Leaking Sunroof Defect and the potential damage to the vehicle the defect caused, as well as the loss of enjoyment and use of her vehicle, FUSCO would have asked, prior to his purchase, the vehicle be inspected as repaired as identified by Defendant in

its "General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013)" as well as Defendant's Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, and Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U)" and FUSCO would not have suffered the harms, losses and/or damages he did when his sunroof leaked in October 2017.

**F.    Defendant GENERAL MOTORS LLC ("GM" or "Defendant")**

81.    Defendant GENERAL MOTORS LLC ("Defendant GM"), is a Delaware Corporation (Delaware Department of State, Division of Corporations Entity File No: 4692623) whose principal place of business and corporate nerve center is in Detroit, Michigan.

82.    At all times relevant herein, Defendant GM was engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and/or servicing Cadillac automobiles, including the Class Vehicles, and other Cadillac motor vehicles

and motor vehicle components throughout the United States and in particular through its more than 60 dealerships in the state of California.

## IV.

### TOLLING OF THE STATUTE OF LIMITATIONS

#### A. Discovery Rule Tolling

83. Plaintiffs and class members did not discover, and could not have discovered through the exercise of reasonable diligence, that their Cadillac SRX vehicles' sunroofs suffered from a systemic design, manufacturing, and/or installation defect and that GM had misrepresented, and omitted material facts concerning, the superior quality and durability of the defective sunroofs within the time period of any applicable statutes of limitation. Among other things, Plaintiffs did not know and could not have known that the sunroofs regularly leak as a result of the Leaking Sunroof Defect's design, manufacturing, and/or installation and/or that GM was aware of the widespread and common defect. Among other things, GM knew that the sunroofs were defectively designed, manufactured, and/or installed, lacked durability, and were not free from defects and defects in materials and workmanship.

36

84.    Plaintiffs and Class members had no way of knowing about the defects in their sunroofs and the other information concealed by GM.  GM systematically lied to Plaintiffs and Class members concerning the qualities of the Leaking Sunroof Defect.  When problems were discovered, GM claimed there was no defect, and provided other reasons for the Leaking Sunroof Defect.

85.    Further, GM has repeatedly and consistently misled Plaintiffs and the Class by engaging in extensive misdirection towards the Plaintiffs and the Class. GM repeatedly represented that to the extent any customers had experienced leaking of their sunroofs that it was a product of the customers' care and maintenance of the sunroof and denied warranty claims – something their own internal documents proved otherwise.

86.    Even now, GM denies that the Leaking Sunroof Defect is the result of the product's design, manufacturing, and/or installation.

87.    Plaintiffs and Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that GM knew that its products were defective, nor would a reasonable and diligent investigation have disclosed that GM had information in its possession about

37

the existence of defects and that GM opted to conceal, and still conceals, information about the defect.

88.    Within the period of any applicable statutes of limitation, Plaintiffs and Class members could not have discovered through the exercise of reasonable diligence that GM was concealing defects in its sunroof causing the Leaking Sunroof Defect as herein alleged.

89.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the GM Vehicles.

**B.    Fraudulent Concealment Tolling**

90.    All applicable statutes of limitation have also been tolled by GM's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

91.    GM knew that the sunroofs were defective each time it sold and installed a defective sunroof, as well as each and every instance when GM repaired and replaced a vehicle experiencing the Leaking Sunroof Defect. GM further knew that the defects in the product would not be evident to a buyer and that buyers reasonably relied on GM's superior technical knowledge and

claimed "testing" of the products it was selling.  Further, GM intentionally concealed from, or failed to notify, Plaintiffs, Class members, and the public of the defective product, and the true quality, performance, and durability of the defective sunroofs.

92.    GM knowingly manufactured, marketed, sold, and installed the defective sunroofs well after it knew, or had reason to know, the sunroofs were defective in their composition, design, engineering, and/or installation, and yet GM never amended or updated its marketing, promotional, or sales material used universally by GM and provided to Plaintiffs and Class members.

93.    GM's fraudulent concealment was uniform across all class members; GM concealed from everyone the true nature of the Leaking Sunroof Defect.

**C.    Estoppel**

94.    GM was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Leaking Sunroof Defect.

95.     Instead, GM knowingly, affirmatively, and actively concealed or recklessly disregarded the true character, quality, and nature of the Leaking Sunroof Defect and made misrepresentations, and material omissions, about the quality, reliability, characteristics, and performance of the defective sunroofs in its communications with consumers.

96.     Among other things, GM reassured Plaintiffs and Class members that the problems that they were having with the Leaking Sunroof Defect were not related to any defect in the sunroofs or the fault of GM.

97.     Based on the foregoing, GM is estopped from relying on any statutes of limitations in defense of this action.

## V.

## CLASS ACTION ALLEGATIONS

98.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed class/sub-classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

99.     Based on information presently available Plaintiffs seeks to certify

a class pursuant to Fed. R. Civ. Pro. 23(a) and (b)(3) defined as follows (the

"Nationwide Class" or "Class"):

> All current and former owners of 2010-2013 Cadillac SRX vehicles
> located in the United States and Canada who experienced the
> Leaking Sunroof Defect and were required to pay for repairs.

> Excluded from the class/sub-class are: (1) Defendant and any entity or

division in which Defendant has a controlling interest, and its legal

representatives, officers, directors, assigns, and successors; (2) the Magistrate,

District Court Judge or other judicial officers to whom this case is assigned

and their staff and immediate family; and (3) claims of personal injury by

persons who may have suffered personal injuries as a result of the Leaking

Sunroof Defect.

100.    Based on information presently available Plaintiffs seeks to certify

a class pursuant to Fed. R. Civ. Pro. 23(a) and (b)(2) defined as follows (the

"Injunctive" or "Declaratory Relief Class"):

> All current and former owners of 2010-2013 Cadillac SRX vehicles
> located in the United States and Canada who purchased or leased
> a model year 2010-2013 Cadillac SRX vehicle for personal use and
> not for resale.

Excluded from the class/sub-class are: (1) Defendant and any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Magistrate, District Court Judge or other judicial officers to whom this case is assigned and their staff and immediate family; and (3) claims of personal injury by persons who may have suffered personal injuries as a result of the Leaking Sunroof Defect.

101.   Plaintiffs additionally seek to represent the following sub-classes (collectively, the "State Sub-Classes") initially defined as follows:

a.   All current and former owners of 2010-2013 Cadillac SRX vehicles residing in the State of Pennsylvania who experienced the Leaking Sunroof Defect and were required to pay for repairs;

b.   All current and former owners of 2010-2013 Cadillac SRX vehicles residing in the State of Pennsylvania who purchased or leased a model year 2010-2013 Cadillac SRX vehicle for personal use and not for resale.

c.      All current and former owners of 2010-2013 Cadillac SRX vehicles residing in the State of Florida who experienced the Leaking Sunroof Defect and were required to pay for repairs;

d.      All current and former owners of 2010-2013 Cadillac SRX vehicles residing in the State of Florida who purchased or leased a model year 2010-2013 Cadillac SRX vehicle for personal use and not for resale.

e.      All current and former owners of 2010-2013 Cadillac SRX vehicles residing in the State of Michigan who experienced the Leaking Sunroof Defect and were required to pay for repairs;

f.      All current and former owners of 2010-2013 Cadillac SRX vehicles residing in the State of Michigan who purchased or leased a model year 2010-2013 Cadillac SRX vehicle for personal use and not for resale.

g.      All current and former owners of 2010-2013 Cadillac SRX vehicles residing in the State of Georgia who experienced

the Leaking Sunroof Defect and were required to pay for repairs;

h. All current and former owners of 2010-2013 Cadillac SRX vehicles residing in the State of Georgia who purchased or leased a model year 2010-2013 Cadillac SRX vehicle for personal use and not for resale.

i. All current and former owners of 2010-2013 Cadillac SRX vehicles residing in the State of New York who experienced the Leaking Sunroof Defect and were required to pay for repairs;

j. All current and former owners of 2010-2013 Cadillac SRX vehicles residing in the State of New York who purchased or leased a model year 2010-2013 Cadillac SRX vehicle for personal use and not for resale.

102. Plaintiffs reserve the right to amend the class and/or subclass definitions if discovery and further investigation reveal the class/sub-class should be expanded, otherwise divided into subclasses, or modified in any other way.

## A.   Numerosity - Fed. R. Civ. Pro. 23(a)(1)

103.   Although precise numbers are not available at the time of the filing of this Class Action Complaint, Plaintiffs allege the Class consists of more than 222,000 people.   Defendant delivered and sold or leased approximately 222,260 of the Cadillac SRX vehicles model years 2010-2013 ("Class Vehicles") throughout the United States and Canada.   Therefore, the potential members of the class as defined are so numerous and are dispersed throughout the United States such that joinder of all class members is impracticable.   Disposition of the claims of the class members in a single action will provide substantial benefits to all parties and to the Court.

## B.   Commonality and Predominance - Fed. R. Civ. Pro. 23(a)(2) and 23 (b)(3)

104.   This action involves common questions of law and fact that predominate over any questions affecting individual class members, including:

a.   whether the Class Vehicles are defective;

b.   whether Defendant knew or should have known about the Leaking Sunroof Defect, and, if so, how long Defendant has known of the

defect;

       c.      whether Defendant omitted and/or refused or failed to disclose material facts about the standards, quality, and characteristics of the Class Vehicles in particular as it relates to the Leaking Sunroof Defect;

       d.      whether Defendant's omissions and/or refusals or failures to disclose material facts regarding the standards, quality and characteristics of the Class Vehicles were likely to mislead reasonable consumers;

       e.      whether Defendant's omissions and/or refusals or failures to disclose material facts that sunroofs on the Class Vehicles were defective in their design and/or manufacture in that they leaked and water intruded into the passenger compartment of the vehicle was a material fact that a reasonable consumer would be expected to rely on when deciding whether to purchase or lease a Class Vehicle;

       f.      whether Plaintiffs and the other class members have been damaged and, if so, the extent of such damage; and

       g.      whether Plaintiffs and the other class members are entitled to equitable relief, including but not limited to restitution and injunctive relief;

h.     whether Defendant should be ordered to make restitution to Plaintiff and the Class;

i.     whether Defendant breached its express and/or implied warranty(ies) covering the Class Vehicles with regard to the Leaking Sunroof defect;

105.   Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison in both quality and quantity, to the numerous common questions that dominate this action.

C.     **Typicality - Fed. R. Civ. Pro. 23(a)(3)**

106.   The claims of Plaintiffs, as the representative plaintiffs for members of the proposed class/sub-classes, are typical of the claims of the class in that the representative Plaintiffs, like all class members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Defendant. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and  all  other  class  members,  and  no  defense  available  to

47

Defendant is unique to any one plaintiff.

107.   The representative Plaintiffs, like all class members, have been damaged by Defendant's misconduct in that their vehicles suffer from the Leaking Sunroof Defect and they have incurred and/or will incur out-of-pocket unreimbursed costs and expenses relating to repairing, replacing and/or cleaning vehicles caused by the Leaking Sunroof Defect and any other damage proximately caused by the Leaking Sunroof Defect. Furthermore, the factual bases of Defendant's misconduct as herein alleged are common to Plaintiffs and all class members and represent a common thread of misconduct resulting in injury to all class members.

### D.   Adequacy of Representation - Fed. R. Civ. Pro. 23(a)(4)

108.   Plaintiffs and their counsel will fairly and adequately represent and protect the interests of the class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions and/or multi-party claims who will fairly and adequately represent and protect the interests of the class.

109. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of and for the benefit of the class and have

the resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the class.

### E.   Superiority - Fed. R. Civ. Pro. 23(b)(3)

110.   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm or other financial detriment suffered individually by Plaintiffs and the other class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impractical for class members to individually seek redress for Defendant's wrongful conduct.  Absent a class action, most class members would likely find the cost of litigating their individual claims prohibitively high based on the cost of repairs and/or diminution in value of the Class Vehicles and would therefore have no effective remedy at law.  Because of the relatively small size of the individual class members' claims, it is likely that only a few class members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, class members will continue to incur damages, and Defendant's misconduct will

continue without remedy.

111.   Even if class members could afford individual litigation the court system should not be forced to bear such inefficiency.   Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system.

112.   Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment presents fewer difficulties in managing the litigation and provides the benefits of single adjudication of the controversy and judicial economies of scale, and supervision by a single court resulting in conservation of judicial resources.

## VI.

## FIRST CAUSE OF ACTION

**(Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law) [73 P.S. §201-1 to §201-903, *et seq.*]**

113.   Plaintiff DIVIS hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

114.   Plaintiff DIVIS purchased her Cadillac SRX vehicle primarily for personal, family, or household purposes.

115.   Pennsylvania declares unlawful all unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.   73 P.S. §201-1 to §201-9.3 (the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

116.   By engaging in the acts, conduct and business practices as alleged herein, Defendant has violated Pennsylvania's UTPCPL.  More specifically, Defendant engaged in an unlawful, unfair and/or fraudulent business acts or practices by failing and/or refusing to repair, correct or otherwise remedy pursuant to Defendant's express warranty the Leaking Sunroof Defect on the Class Vehicles and by requiring Plaintiff DIVIS and the class members to pay from their own pockets the costs to repair, correct or otherwise remedy the Leaking Sunroof Defect.

117.   Defendant engaged in an unlawful business practice by failing to disclose the material fact that the Class Vehicles suffered from the Leaking Sunroof Defect in violation of Pennsylvania's UTPCPL as herein alleged.

118. Defendant engaged in an unlawful business practice by representing the Class Vehicles were of a particular standard or quality when they were not in violation of Pennsylvania's UTPCPL set forth at 73 P.S. 201-2(4)(vii), as herein alleged.

119. Defendant engaged in an unlawful and unfair business practice by refusing to honor and abide by its express warranties and Customer Satisfaction bulletin and service campaign covering the Class Vehicles and by expressly excluding the Class Vehicles from warranty coverage for the Leaking Sunroof Defect as herein alleged despite Defendant's actual and/or constructive knowledge during the express warranty period of the Leaking Sunroof Defect in violation of Pennsylvania's UTPCPL set forth at 73 P.S. 201-2(4)(xiv), as herein alleged.

120. Defendant engaged in an unlawful business practice by engaging in fraudulent or deceptive conduct by denying warranty coverage, omitting and/or concealing or failing to provide information to Plaintiff DIVIS and the class members of the existence of the Leaking Sunroof Defect and that it is caused by a defect in the design and/or manufacture and that such defects are covered under Defendant's express warranties, or which creates a likelihood

of confusion or misunderstanding in violation of Pennsylvania's UTPCPL set forth at 73 P.S. 201-2(4)(xxi), as herein alleged.

121.  Defendant's unfair business practice threatens an incipient violation of consumer protection laws including but not limited to the Pennsylvania UTPCPL as herein alleged and/or violates the policy and/or spirit of such consumer protection laws or otherwise significantly threatens or harms consumers.

122.  Defendant's business practices as herein alleged are likewise unfair because the harms caused to consumers by Defendant's business practice of denying warranty coverage are outweighed by the benefits created.

123.  Plaintiff DIVIS alleges Defendant's business practice as herein alleged was fraudulent because Defendant had no intention of honoring or abiding by its express warranty or Cadillac Shield warranty which intent was/is manifested by Defendant denying warranty coverage for the Leaking Sunroof Defect and by refusing to repair DIVIS's and Class Vehicles in accordance with the express warranties and Customer Satisfaction program and service bulletin as herein alleged.

124.   Defendant's fraudulent intent behind its business practice is further evidenced by the fact when Plaintiff DIVIS experienced the Leaking Sunroof Defect in June 2017, and took her vehicle to Beans Cadillac upon inspection of Plaintiff DIVIS's vehicle it was discovered the water intrusion was caused by the Leaking Sunroof Defect, which was the same problem DIVIS experienced in or about April 2014, and for which Defendant provided repair under warranty at no cost to DIVIS.   Nonetheless, in June 2017, Defendant refused to repair the same Leaking Sunroof Defect and required Plaintiff DIVIS to pay for the cost of repairs from her own pocket.

125.   As a result of Defendant's unlawful, unfair and/or fraudulent business practices as herein alleged Plaintiff DIVIS paid out of her own pocket costs for the repair, replacement and/or correction of the Leaking Sunroof Defect and as such has suffered an injury in fact and lost money as a result of Defendant's conduct.   Plaintiff DIVIS further alleges she and the other Pennsylvania class members overpaid for their Class Vehicle because the Leaking Sunroof Defect made them less valuable than the purchase price.

126.   Unless restrained and enjoined from continuing its unlawful, unfair and/or fraudulent business practices as herein alleged Defendant will

continue to engage in the alleged unlawful, unfair or fraudulent business practices as alleged herein in violation of Pennsylvania's UTPCPL, 73 P.S. 201-2, *et seq*, for which Plaintiff DIVIS and the class has no adequate remedy at law.  Plaintiff DIVIS and the class members seek an order of this Court for an injunction and such other equitable relief as set forth herein and as may be fair, just and proper.

127.   As a direct and proximate result of Defendant's conduct as herein alleged, Plaintiff DIVIS and the class members are entitled to recover actual damages, or $100, whichever is greater, including but not limited to consequential damages, and treble damages in accordance with Pennsylvania's UTPCPL, 73 P.S. 201-9.2(a), or alternatively double damages, all in an amount according to proof at trial.

128.   The actions and conduct of Defendant as herein alleged was implemented, authorized, approved, ratified, and/or directed by managing agents of Defendant.

129.   As a further proximate result of the aforementioned acts. Plaintiff DIVIS was required to and did employ attorneys and other legal representatives to represent her and to prosecute these claims on her behalf

and on behalf of the members of the class and to enforce an important right affecting the public interest and conferring a significant pecuniary benefit on a large class of persons, namely the owners of Class Vehicles who have been required to pay for repairs and/or replacement of the Leaking Sunroof Defect and as a result are entitled to an award of attorney fees and costs, including the fees associated with experts, pursuant to applicable law, including but not limited to Pennsylvania's UTPCPL, 73 P.S. 201-9.2(a), in an amount according to proof.

## VII.

## SECOND CAUSE OF ACTION

### (Breach of Warranty) [13 Pa.C.S. §2313, *et seq.*]

130.   Plaintiff DIVIS hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

131.   Plaintiff DIVIS alleges Defendant breached the express warranties, as alleged herein, which were provided by Defendant on the Class Vehicles, in violation of the Pennsylvania Commercial Code 13 Pa.C.S. §2313, *et seq.*

132.   Plaintiff DIVIS alleges the sales and/or lease of Class Vehicles carried an implied warranty of merchantability that the sunroofs on Class

Vehicles are and would be fit for their ordinary purposes of keeping water out of the interior of the vehicle.

133.   Defendant breached the implied warranty of merchantability of fitness when it sold and/or leased Class Vehicles with the Leaking Sunroof Defect and thus the Class Vehicles were not free of significant defect and they did not perform in the way that goods of that kind should perform.

134.   As a direct and proximate result of Defendant's breach of warranty as herein alleged Plaintiff DIVIS and the class members have suffered consequential and actual harm and damages in that they were forced to pay to repair the Leaking Sunroof Defect from their own pockets all in an amount according to proof.

## VIII.

## THIRD CAUSE OF ACTION

### (Violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")) [Fla. Stat. §501.201, *et seq.*]

135.   Plaintiff SIROTA hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

/ / /

/ / /

57

136.   Florida declares unlawful all unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce.  Fla. Stat. §501.201, *et seq.*

137.  SIROTA alleges Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive practices in the conduct of trade or commerce under Florida law by manufacturing and selling Class Vehicles with the Leaking Sunroof Defect and omitting material facts concerning the defective sunroofs and the fact they leak water into the passenger compartments of Class Vehicles. Defendant acted with the intent that Plaintiff SIROTA and all other Florida class members rely on omissions which SIROTA did, and all other objective reasonable consumers would, find important in making the decision whether to purchase a Class Vehicle in the first instance or otherwise ask that it be inspected and/or repaired for the Leaking Sunroof Defect.

138.   SIROTA alleges he would not have purchased the SRX vehicle has he been informed of the existence of the Leaking Sunroof Defect, or he would have at least requested that it be inspected and/or repaired for the Leaking Sunroof Defect.  No reasonable consumer would have purchased a Class

Vehicle, whether new or used, knowing of the existence of the Leaking Sunroof Defect and that they would be exposed to damages and other harms and losses.

139.   Plaintiff SIROTA and the other Florida class members are persons who suffered loss as a result of Defendant's unfair methods of competition, unconscionable acts or practices, and unfair of deceptive practices. Plaintiff SIROTA and the other Florida class members overpaid for their Class Vehicle because the Leaking Sunroof Defect made them less valuable than the purchase price, incurred losses in order to inspect and/or repair their vehicles for damages caused by the Leaking Sunroof Defect.

140.   As a further proximate result of the aforementioned acts. Plaintiff SIROTA was required to and did employ attorneys and other legal representatives to represent him and to prosecute these claims on his behalf and on behalf of the members of the class and to enforce an important right affecting the public interest and conferring a significant pecuniary benefit on a large class of persons, namely the owners of Class Vehicles who have been required to pay for repairs and/or replacement of the Leaking Sunroof Defect and as a result are entitled to an award of attorney fees and costs, including

the fees associated with experts, pursuant to applicable law, including but not limited to Florida's UTPCPL, FL Stat. 501.2105, in an amount according to proof.

## IX.

## FOURTH CAUSE OF ACTION

### (Violation of Michigan Consumer Protection Act ("MCPA")) [Michigan Compiled Laws §455.903, *et seq.*]

141. Plaintiff SCHEFFERS hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

142. The Michigan Consumer Protection Act ("MCPA") declares unlawful all unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce. MCL §455.903, *et seq.* Section 455.903(1), declares "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows: subd. (n): Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction; subd. (s): Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

143.    The MCPA [MCL §455.911(1)] provides that, "[w]hether or not he seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following: (a) Obtain a declaratory judgment that a method, act, or practice is unlawful under section 3; [and/or] (b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice which is unlawful under section 3."

144.    The MCPA [MCL §455.911(3)] allows "a person who suffers loss as a result of a violation of this act may bring a class action on behalf of persons residing or injured in this state for the actual damages caused by any of the following: (a) A method, act, or practice in trade or commerce defined as unlawful under section 3."

145.    On or about October 13, 2017, SCHEFFERS took her SRX vehicle to Cole Century Buick, Pontiac, GMC, Cadillac in Portage, Michigan for inspection and repairs.  Upon inspection of the vehicle SCHEFFERS was told the damage was caused by the Leaking Sunroof Defect.  The description of problem as reported was "Water coming in from under dash where wiper trans was replaced."  The repair technician noted the inspection and repair

included "CK OUT and found sunroof drain tubes shrunk and had pulled out at RT FT.  Replaced both FT drain tubes."  This is precisely the nature, cause and repair of the Leaking Sunroof Defect noted in Defendant's  Customer Satisfaction Bulletins and programs contained in General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013) (see, Exhibit "3" to this complaint), and again in September 2013, in Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D (see, Exhibit "4" to this complaint), and again with Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015) (see, Exhibit "5" to this complaint).

146.   SCHEFFERS alleges the damage to her vehicle and the necessary repairs were caused by the Leaking Sunroof Defect.

147.   SCHEFFERS was charged $554.08, to repair the Leaking Sunroof Defect, and paid that amount from her own pocket to repair the damage caused by the Leaking Sunroof Defect and has thus incurred actual harm and damages as a result of the Leaking Sunroof Defect.  SCHEFFERS was told by the service technician that Defendant GENERAL MOTORS would not cover the cost of repairs because the repair was performed outside the timeframe of

the Customer Satisfaction bulletin #14225, issued January 14, 2015.

148. Prior to experiencing the water intrusion in October 2017, on or about September 7, 2017, SCHEFFERS experienced that the windshield wipers in her SRX vehicle were not working properly and had stopped working. SCHEFFERS took her vehicle to Cole Century for inspection and repair. SCHEFFERS reported to the service advisors at Cole Century that the front windshield wipers were not working properly and that the rear wiper would cycle un-commanded. After inspection SCHEFFERS was told that, with regard to the front windshield wipers, an electrical system repair was needed and the wiper transmission needed replacing. With regard to the rear wiper issue, SCHEFFERS was informed the service technician was unable to duplicate the concern consistently to be able to diagnose the problem. No repairs to the rear wipers were performed. SCHEFFERS thereon alleges that, to the best of her knowledge, the electrical malfunction of the windshield wiper transmission motor was related to and/or caused by the Leaking Sunroof Defect.

149. Prior to the October 2017 water intrusion, and prior to the September 2017 windshield wiper transmission issue, SCHEFFERS' vehicle

had been brought in for inspection and/or repairs, including "multi-point inspections," on numerous occasions between August 2013 (when Defendant issued General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013) (see, Exhibit "3" to this complaint) and September and October 2017. At no time during any of the prior inspections, repairs, or "multi-point inspections" was SCHEFFERS informed, advised, or otherwise given notice that there was a recognized and documented Leaking Sunroof Defect in 2010-2012 Cadillac SRX model year vehicles which included hers.

150. SCHEFFERS alleges that, prior to her October 2017 experience, and unbeknownst to her, a "Manual Close" was noted in the "Required Field Actions" described as "Customer Satisfaction Program" "Number 14225" "Sunroof Drain Hose Leaks" with release date 1/19/2015, in the maintenance history for her vehicle. SCHEFFERS alleges that at no time has she been told, advised or otherwise informed that any inspection, repairs or other action had been taken with regard to Customer Satisfaction Program #14225 in relation to the Leaking Sunroof Defect and her vehicle. SCHEFFERS further alleges there is no record that, prior to October 2017, any such inspection, repair or

other action was taken on her SRX vehicle with regard to the leaking Sunroof Defect despite Defendant's actual and/or constructive knowledge of the existence of the Leaking Sunroof Defect during the original warranty period and/or during the Customer Satisfaction Programs issued by Defendant in August 2013, September 2013 and again in January 2015, as herein alleged.

151.  Plaintiff SCHEFFERS alleges that at no time prior to October 2017 had she been made informed, advised, or otherwise made aware of the existence of the Leaking Sunroof Defect and that her SRX vehicle may be and/or was subjected to the Leaking Sunroof Defect.

152.  SCHEFFERS alleges that at no time after August 2013, when Defendant first issued a Customer Satisfaction program relating to the Leaking Sunroof Defect, did Defendant make SCHEFFERS aware of, advise or otherwise inform and/or disclose to SCHEFFERS the rights and/or remedies available to her and all others similarly situated and/or the obligations of Defendant with regard to inspection and/or repair of the Leaking Sunroof Defect. In so doing, SCHEFFERS alleges Defendant's actions and conduct caused a probability of confusion or a misunderstanding as to the legal rights, obligations and/or remedies of a party to the transactions

relating to inspection and/or repair of the Leaking Sunroof Defect which arose for the first time during the original warranty period and/or during the Customer Satisfaction Programs issued by Defendant in August 2013, September 2013 and again in January 2015, as herein alleged.

153.   Moreover, Defendant excluded vehicles located in Michigan from the Customer Satisfaction program set forth in Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U)" and which was stated to be in effect January 31, 2017, despite its knowledge of the Leaking Sunroof Defect in vehicles including that owned by SCHEFFERS. *See*, Exhibit "5" to this complaint.  In so doing, SCHEFFERS alleges Defendant's actions and conduct caused a probability of confusion or a misunderstanding as to the legal rights, obligations and/or remedies of a party to the transactions relating to inspection and/or repair of the Leaking Sunroof Defect which arose for the first time during the original warranty period and/or during the Customer Satisfaction Programs issued by Defendant in August 2013, September 2013 and again in January 2015, as herein alleged.

154.   SCHEFFERS alleges Defendant purposely, willfully, intentionally and/or negligently failed to disclose to SCHEFFERS the existence of the Leaking Sunroof Defect which SCHEFFERS alleges was a material fact to her and all other reasonable consumers and one which could not reasonably have been known by the consumer. SCHEFFERS also, and/or alternatively, alleges that, beginning in August 2013 during the original warranty period, Defendant failed to reveal to SCHEFFERS and all others similarly situated the material fact of the existence of the Leaking Sunroof Defect and in so doing omitted, withheld and/or otherwise concealed from SCHEFFERS and all others similarly situated the existence of the Leaking Sunroof Defect which SCHEFFERS did, and all other reasonable consumers would, consider material.

155.   SCHEFFERS alleges had she been advised, informed, told or otherwise made aware by Defendant of the existence of the Leaking Sunroof Defect and the potential damage to the vehicle the defect caused, as well as the loss of enjoyment and use of her vehicle, SCHEFFERS would have taken her vehicle for the repairs and/or corrections identified by Defendant in its "General Motors Document ID: 3610923, #PI0044D "Water Leak at

Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013)" as well as Defendant's Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, and Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U)" and SCHEFFERS would not have suffered the harms, losses and/or damages she did when her sunroof leaked in October 2017.

156.   As a direct and proximate result of the actions, conduct and/or failures and/or omissions of Defendant as herein alleged, Plaintiff SCHEFFERS has sustained actual damages and harm in an amount according to proof at trial.

157.   The MCPA [MCL §455.911(4)] provides that "[o]n motion of a person and without bond in an action brought under subsection (3) the court may make an appropriate order: to reimburse persons who have suffered damages; to carry out a transaction in accordance with the aggrieved persons' reasonable expectations; to strike or limit the application of unconscionable clauses of contracts to avoid an unconscionable result; or to grant other

appropriate relief. The court after a hearing may appoint a receiver or order sequestration of the defendant's assets if it appears to the satisfaction of the court that the defendant threatens or is about to remove, conceal, or dispose of his assets to the detriment of members of the class." Plaintiff SCHEFFERS for herself and on behalf of all others similarly situated therefore prays for such relief in an amount according to proof.

158.   Plaintiff SCHEFFERS alleges Defendant GENERAL MOTORS has and continues to deny warranty coverage and/or refuses to cover and/or pay the costs of inspection and/or repairs of the Leaking Sunroof Defect in the Class Vehicles.   Plaintiff SCHEFFERS for herself and all others similarly situated therefore prays for an injunction and/or equitable relief requiring Defendant to inspect Class Vehicles for the Leaking Sunroof Defect and to cover the costs of any repairs to Class Vehicles to cure the leaking Sunroof Defect.

159.   The MCPA [MCL §455.911(5)] provides that [i]f at any stage of proceedings brought under subsection (3) the court requires that notice be sent to the class, a person may petition the court to require the defendant to bear the cost of notice. In determining whether to impose the cost on the

defendant or the plaintiff, the court shall consider the probability that the person will succeed on the merits of his action."  Plaintiff SCHEFFERS for herself and on behalf of all others similarly situated therefore prays for such relief.

## X.

## FIFTH CAUSE OF ACTION

**(Breach of Express Warranty)**
**[Michigan Compiled Laws §440.2607, *et seq.*]**

160.   Plaintiff SCHEFFERS hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

161.   According to Defendant's express warranty for the 2010-2012 Cadillac SRX model year vehicles ("Class Vehicles") the vehicles are subject to a 48-month (4-year), 50,000 mile Bumper-to-Bumper Limited Warranty with no deductible.   Plaintiff alleges the "Bumper-to-Bumper Limited Warranty" covers vehicles registered in the U.S. and Canada from the date the vehicle is first delivered until it reaches 4 years or 50,000 miles (whichever occurs first).  It covers the vehicle from bumper to bumper on any vehicle defect related to materials or workmanship.

70

162. Defendant's stated warranty is an "express warranty" under Michigan law.

163. Defendant provided all purchasers and/or leasees of Class Vehicles with the express warranty described herein which became a part of the basis of the bargain and a part of the purchase or lease contract between the class members and Defendant.

164. The seals, hoses and all other parts, components, materials, and/or workmanship associated with the manufacture, installation and/or design of the Leaking Sunroof Defect were originally supplied by Defendant.

165. The Class Vehicles are defective in that they suffer from the Leaking Sunroof Defect which causes the sunroofs to fail under normal and foreseeable use.

166. The Leaking Sunroofs in the Class Vehicles were defective when designed, manufactured and/or installed and failed to function properly throughout the express warranty period. The Leaking Sunroof Defect continues to fail and manifest itself even after the warranty period has expired.

71

167.   Because the Leaking Sunroofs in Class Vehicles were and/or are defective they were substantially likely to fail during the subject vehicles' ordinary useful life.

168.   Defendant breached its express warranty when it refused to repair and/or replace the Leaking Sunroof defect in the Class Vehicles "without deductible" as stated in its express warranty and Defendant required Plaintiff and the class members to pay from their own pockets the costs of parts and/or labor to repair, replace and clean their vehicles for damage caused by the Leaking Sunroof defect.

169.   Defendant had actual and/or constructive knowledge the Leaking Sunroof Defect existed in Class Vehicles during the original "Bumper-to-Bumper" warranty.  In or about August 30, 2013, Defendant issued General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013)," which provides that "GM bulletins are intended for use by professional technicians, NOT a 'do-it-yourselfer'."   Attached as Exhibit "3" to this Class Action Complaint is a copy of Document ID: 3610923, #PI0044D.  Defendant therefore intended that Class Vehicles with the Leaking Sunroof Defect are

72

not to be repaired and/or replaced by anyone other than a professional technician.   According to Document ID: 3610923, #PI0044D the "Condition/Concern" is that "Some customers may comment on seeing a water leak in the driver or front passenger floor area and/or finding the front carpet wet."  Defendant identified "the most common causes of this concern are: • There may be a void in the cowl seam sealer, in the corners below the sunroof drain hose grommets. • The sunroof front drain hose grommet(s) may not be connected or fully sealed in the cowl panel or at the sunroof frame spigot. • The sunroof front drain hoses are mis-routed or are too short, and display a higher level of tension.  This higher tension may tend to cause a future disconnect or unseating of the grommet."   Defendant stated in Document ID: 3610923, #PI0044D that "This PI has been revised to update the Condition/Concern, Recommendation/Instructions sections and update the Warranty Information with the Global Labor Code (GLC). Please discard PI0044C."  Defendant also identified in Document ID: 3610923, #PI0044D the labor operation and parts necessary to repair the Leaking Sunroof Defect under warranty.  *See*, Exhibit "3" at pg 7.

73

170.   Likewise, in or about September 2013, also within the initial Bumper-to-Bumper Limited Warranty period of the Class Vehicles, Defendant issued Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, which provided information relating to the Leaking Sunroof defect.  Attached hereto as Exhibit "4" is a copy of SB-10052823-4367, Bulletin No. PI0044D. According to Service Bulletin PI0044D the "Condition/Concern" is that "Some customers may comment on seeing a water leak in the driver or front passenger floor area and/or finding the front carpet wet."   Defendant identified "the most common causes of this concern are: • There may be a void in the cowl seam sealer, in the corners below the sunroof drain hose grommets. • The sunroof front drain hose grommet(s) may not be connected or fully sealed in the cowl panel or at the sunroof frame spigot. • The sunroof front drain hoses are mis-routed or are too short, and display a higher level of tension.  This higher tension may tend to cause a future disconnect or unseating of the grommet."  Defendant stated in Service Bulletin No. PI0044D that "This PI has been revised to update the Condition/Concern, Recommendation/Instructions sections and update the Warranty Information with the Global Labor Code (GLC). Please discard PI0044C."  Defendant also

74

identified in Service Bulletin No. PI0044D the labor operation and parts necessary to repair the Leaking Sunroof defect under warranty.  *See*, Exhibit "4" at pg 6.

171.    Moreover, Defendant then issued Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, which provided information relating to the Leaking Sunroof (see, Exhibit "1"), as well as issuing Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U)" which excluded specifically vehicles located in Michigan (see, Exhibit "3"), at all times Defendant is and has been aware of the Leaking Sunroof Defect and its breach of its express warranty as applied to the Class Vehicles.

172.    Plaintiff SCHEFFERS and the class members have been and continue to be damaged by Defendant's breach of its express warranty, including bearing the costs of repairing and/or replacing the Leaking Sunroof Defect, and have suffered actual damages in an amount according to proof at trial.

173.   Plaintiff SCHEFFERS and the class members are entitled to legal and equitable relief against Defendant including damages, specific performance, rescission, costs of suit, and other relief as appropriate.

174.   Plaintiff SCHEFFERS and the class members are entitled to an award of nominal damages for Defendant's breach of the express warranty as herein alleged according to Michigan law.

175.   Defendant's conduct in concealing, omitting and/or purposely failing to disclose to Plaintiff SCHEFFERS and the class members the existence of the Leaking Sunroof Defect, and/or Defendant's refusal to inspect and repair the Leaking Sunroof Defect in the Class Vehicles during the initial express warranty period despite Defendant's actual knowledge thereof, constitutes actionable fraud in violation of Michigan law, in addition to a breach of Defendant's express warranty.  As such, Plaintiff and the class members are entitled to recover all available remedies for Defendant's fraudulent conduct pursuant to MCL §440.2721, including an award of exemplary damages in an amount according to proof.

/ / /

/ / /

76

## XI.

## SIXTH CAUSE OF ACTION

## (Violation of Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §§10-1-370 to 10-1-375)

176.    Plaintiff OSS hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

177.    The Georgia Uniform Deceptive Trade Practices Act ("UDTPA") declares unlawful all unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce.  Ga. Code Ann. §10-1-370, *et seq.*  Section 10-1-372 declares "a person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: "(7) Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another [subd. (7)]; engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" [subd. (12)].

178.    The UDTPA [§10-1-373(a)] provides that, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court

77

considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive is not required."

179.   On or about October 16, 2017, OSS took her SRX vehicle to Classic Cadillac in Atlanta, Georgia, for inspection and repairs.  Upon inspection of the vehicle OSS was told the damage was caused by the Leaking Sunroof Defect and the rear drain tubes were replaced.  This is precisely the nature, cause and repair of the Leaking Sunroof Defect noted in Defendant's Customer Satisfaction Bulletins and programs contained in General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013) (see, Exhibit "3" to this complaint), and again in September 2013, in Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D (see, Exhibit "4" to this complaint), and again with Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015) (see, Exhibit "5" to this complaint).

180.   Defendant GM has refused to cover the cost of repairing the Leaking Sunroof Defect under warranty and is requiring OSS to pay some $499.00 out of her own pocket for the repairs.  OSS, therefore, incurred actual harm and damages as a result of the Leaking Sunroof Defect.

181.   OSS alleges the damage to her vehicle and the necessary repairs were caused by the Leaking Sunroof Defect.

182.   Plaintiff OSS seeks injunctive relief pursuant to the Georgia UDTPA enjoining Defendant from denying warranty coverage for the Leaking Sunroof Defect in the Class Vehicles and to cover costs for repairing the Leaking Sunroof Defect in the Class Vehicles.  Plaintiff and the Class Members face the threat of and will be injured in the future by Defendant's continued denial of warranty coverage for the Leaking Sunroof Defect and the Class Members being forced to pay from their own pockets for a defect in the Class Vehicles which was known to Defendant during the original warranty period and during the Customer Satisfaction program initiated by Defendant beginning in August 2013 and again in January 2015 as herein alleged.

183.   Plaintiff OSS and the Class Members allege Defendant willfully engaged in a trade practice knowing it to be deceptive.

184.   Plaintiff OSS alleges Defendant GM has and continues to deny warranty coverage and/or refuses to cover and/or pay the costs of inspection and/or repairs of the Leaking Sunroof Defect in the Class Vehicles.  Plaintiff OSS for herself and all others similarly situated therefore prays for an

injunction and/or equitable relief requiring Defendant to inspect Class

Vehicles for the Leaking Sunroof Defect and to cover the costs of any repairs

to Class Vehicles to cure the leaking Sunroof Defect.

185.   As a further proximate result of the aforementioned acts Plaintiff

OSS was required to and did employ attorneys and other legal representatives

to represent her and to prosecute these claims on her behalf and on behalf of

the members of the class and as a result is entitled to an award of attorney

fees and costs, pursuant to applicable law, including but not limited to

Georgia's UDTPA, §10-1-373(b), in an amount according to proof.

## XII.

### SEVENTH CAUSE OF ACTION

### (Breach of Express Warranty)
### [Georgia Code Ann. §11-2-313, *et seq.*]

186.   Plaintiff OSS hereby incorporates by reference the allegations

contained in the preceding paragraphs of this Complaint.

187.   According to Defendant's express warranty for the 2010-2012

Cadillac SRX model year vehicles ("Class Vehicles") the vehicles are subject

to a 48-month (4-year), 50,000 mile Bumper-to-Bumper Limited Warranty

with no deductible.   Plaintiff alleges the "Bumper-to-Bumper Limited

Warranty" covers vehicles registered in the U.S. and Canada from the date the vehicle is first delivered until it reaches 4 years or 50,000 miles (whichever occurs first). It covers the vehicle from bumper to bumper on any vehicle defect related to materials or workmanship.

188. Defendant's stated warranty is an "express warranty" under Georgia law.

189. Defendant provided all purchasers and/or leasees of Class Vehicles with the express warranty described herein which became a part of the basis of the bargain and a part of the purchase or lease contract between the Class Members and Defendant.

190. The seals, hoses and all other parts, components, materials, and/or workmanship associated with the manufacture, installation and/or design of the Leaking Sunroof Defect were originally supplied by Defendant.

191. The Class Vehicles are defective in that they suffer from the Leaking Sunroof Defect which causes the sunroofs to fail under normal and foreseeable use.

192. The Leaking Sunroofs in the Class Vehicles were defective when designed, manufactured and/or installed and failed to function properly

throughout the express warranty period.   The Leaking Sunroof Defect continues to fail and manifest itself even after the warranty period has expired.

193.   Because the Leaking Sunroofs in Class Vehicles were and/or are defective they were substantially likely to fail during the subject vehicles' ordinary useful life.

194.   Defendant breached its express warranty when it refused to repair and/or replace the Leaking Sunroof defect in the Class Vehicles "without deductible" as stated in its express warranty and Defendant required Plaintiff and the Class Members to pay from their own pockets the costs of parts and/or labor to repair, replace and clean their vehicles for damage caused by the Leaking Sunroof Defect.

195.   Defendant had actual and/or constructive knowledge the Leaking Sunroof Defect existed in Class Vehicles during the original "Bumper-to-Bumper" warranty.  In or about August 30, 2013, Defendant issued General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013)," which provides that "GM bulletins are intended for use by professional technicians,

NOT a 'do-it-yourselfer'."   Attached as Exhibit "3" to this Class Action Complaint is a copy of Document ID: 3610923, #PI0044D.   Defendant therefore intended that Class Vehicles with the Leaking Sunroof Defect are not to be repaired and/or replaced by anyone other than a professional technician.   According to Document ID: 3610923, #PI0044D the "Condition/Concern" is that "Some customers may comment on seeing a water leak in the driver or front passenger floor area and/or finding the front carpet wet."   Defendant identified "the most common causes of this concern are: • There may be a void in the cowl seam sealer, in the corners below the sunroof drain hose grommets. • The sunroof front drain hose grommet(s) may not be connected or fully sealed in the cowl panel or at the sunroof frame spigot. • The sunroof front drain hoses are mis-routed or are too short, and display a higher level of tension.   This higher tension may tend to cause a future disconnect or unseating of the grommet."   Defendant stated in Document ID: 3610923, #PI0044D that "This PI has been revised to update the Condition/Concern, Recommendation/Instructions sections and update the Warranty Information with the Global Labor Code (GLC). Please discard PI0044C."   Defendant also identified in Document ID: 3610923, #PI0044D the

83

labor operation and parts necessary to repair the Leaking Sunroof Defect under warranty.  *See*, Exhibit "3" at pg 7.

196.   Likewise, in or about September 2013, also within the initial Bumper-to-Bumper Limited Warranty period of the Class Vehicles, Defendant issued Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, which provided information relating to the Leaking Sunroof defect.  Attached hereto as Exhibit "4" is a copy of SB-10052823-4367, Bulletin No. PI0044D. According to Service Bulletin PI0044D the "Condition/Concern" is that "Some customers may comment on seeing a water leak in the driver or front passenger floor area and/or finding the front carpet wet."   Defendant identified "the most common causes of this concern are: • There may be a void in the cowl seam sealer, in the corners below the sunroof drain hose grommets. • The sunroof front drain hose grommet(s) may not be connected or fully sealed in the cowl panel or at the sunroof frame spigot. • The sunroof front drain hoses are mis-routed or are too short, and display a higher level of tension.  This higher tension may tend to cause a future disconnect or unseating of the grommet."  Defendant stated in Service Bulletin No. PI0044D that "This PI has been revised to update the Condition/Concern,

84

Recommendation/Instructions sections and update the Warranty Information with the Global Labor Code (GLC). Please discard PI0044C." Defendant also identified in Service Bulletin No. PI0044D the labor operation and parts necessary to repair the Leaking Sunroof defect under warranty. *See*, Exhibit "4" at pg 6.

197.   Moreover, Defendant then issued Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, which provided information relating to the Leaking Sunroof (see, Exhibit "1"), as well as issuing Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U)" which excluded specifically vehicles located in Michigan (see, Exhibit "3"), at all times Defendant is and has been aware of the Leaking Sunroof Defect and its breach of its express warranty as applied to the Class Vehicles.

198.   Plaintiff OSS and the class members have been and continue to be damaged by Defendant's breach of its express warranty, including bearing the costs of repairing and/or replacing the Leaking Sunroof Defect, and have suffered actual, incidental, and consequential damages in an amount

according to proof at trial.

199.   Plaintiff OSS and the class members are entitled to legal and equitable relief against Defendant including damages, specific performance, rescission, costs of suit, and other relief as appropriate.

200.   Plaintiff OSS and the class members are entitled to an award of damages for Defendant's breach of the express warranty as herein alleged according to Georgia law. [Ga. Code Ann. §11-2-715].

201.   Defendant's conduct in concealing, omitting and/or purposely failing to disclose to Plaintiff OSS and the class members the existence of the Leaking Sunroof Defect, and/or Defendant's refusal to inspect and repair the Leaking Sunroof Defect in the Class Vehicles during the initial express warranty period despite Defendant's actual knowledge thereof, constitutes actionable fraud in violation of Georgia law, in addition to a breach of Defendant's express warranty.  As such, Plaintiff and the class members are entitled to recover all available remedies for Defendant's fraudulent conduct pursuant to Ga. Code Ann. §11-2-721, including an award of exemplary damages in an amount according to proof.

## XIII.

## EIGHTH CAUSE OF ACTION

### (Violation of New York Deceptive Practices Act,
### New York General Business Law §349)

202.   Plaintiff FUSCO hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

203.   Plaintiff FUSCO and other class members located in the state of New York are persons within the meaning of New York General Business Law ("GBL") §349(h).  Defendant engaged in business, trade or commerce within the meaning of GBL §349(a).

204.   GBL §349(a) declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York State]."

205.   As described herein, Defendant engaged in consumer-oriented conduct which was directed at the consuming public in that Defendant has denied warranty coverage for the Leaking Sunroof Defect despite Defendant's actual knowledge as of August 2013, during the original warranty period, of the existence of the defect in the Class Vehicles, including the vehicle purchased and owned by Plaintiff FUSCO.  The fundamental nature of

87

Defendant's activities was to mislead the consuming public into believing the sunroofs in their Cadillac SRX vehicles would operate as intended in keeping water out of the interior of the vehicle when in fact Defendant knew that was not true.

206.   Plaintiff FUSCO purchased his 2013 Cadillac SRX vehicle in or about January 2014.  At the time FUSCO purchased his SRX vehicle it came with Defendant's Bumper-to-Bumper limited warranty as well as the Cadillac Shield warranty.  At the time FUSCO purchased his Cadillac SRX vehicle Defendant had actual knowledge of the existence of the Leaking Sunroof Defect in the Class Vehicles.  Despite Defendant's actual knowledge of the Leaking Sunroof Defect, Defendant concealed, omitted, failed to inform, and/or advise FUSCO and the Class Members of the existence of the Leaking Sunroof Defect which was conduct that was misleading in a material respect in that it lead FUSCO and the Class Members into believing the sunroofs in their vehicles would operate as intended by keeping water from intruding into the interior of the vehicle.

207.   FUSCO further alleges Defendant refused to take any steps to inspect, repair or otherwise remedy the Leaking Sunroof Defect and cover the

costs under Defendant's warranty in FUSCO's and the Class Members' vehicles despite the fact Defendant had issued Customer Satisfaction bulletins in August 2013, and again in January 2015, while FUSCO and the other Class Members' vehicles were still covered by Defendant's warranties.

208.   FUSCO alleges Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive practices in the conduct of trade or commerce under New York law by manufacturing and selling Class Vehicles with the Leaking Sunroof Defect and omitting material facts concerning the defective sunroofs and the fact they leak water into the passenger compartments of Class Vehicles. Defendant acted with the intent that Plaintiff FUSCO and all other New York class members rely on omissions which FUSCO did, and all other objective reasonable consumers would, find important in making the decision whether to purchase a Class Vehicle in the first instance or otherwise ask that it be inspected and/or repaired for the Leaking Sunroof Defect.

209.   FUSCO alleges he would not have purchased the SRX vehicle had he been informed of the existence of the Leaking Sunroof Defect, or alternatively, he and the Class Members would have at least requested their

vehicles be inspected and/or repaired for the Leaking Sunroof Defect prior to purchasing the vehicles and/or during a time when their vehicles were covered by Defendant's warranties.  No reasonable consumer would have purchased a Class Vehicle, whether new or used, knowing of the existence of the Leaking Sunroof Defect and that they would be exposed to damages and other harms and losses.

210.   Plaintiff FUSCO and the other New York class members are persons who suffered loss as a result of Defendant's unfair methods of competition, unconscionable acts or practices, and unfair of deceptive practices.  Plaintiff FUSCO and the other New York class members overpaid for their Class Vehicle because the Leaking Sunroof Defect made them less valuable than the purchase price, incurred losses in order to inspect and/or repair their vehicles for damages caused by the Leaking Sunroof Defect.

211.   Defendant willfully, purposely, knowingly, and/or intentionally violated GBL §349.

212.   The damages suffered by Plaintiff FUSCO and the other New York class members were directly and proximately cause by the materially misleading acts and/or practices of Defendant, as more fully described

herein.

213.   Pursuant to GBL §349(h), Plaintiff FUSCO, individually and on behalf of all other New York class members, seeks a court order enjoining the above-referenced wrongful acts and practices of Defendant.

## XIV.

## NINTH CAUSE OF ACTION

## (Breach of Warranty; NYUCC §§2-101, *et seq.*)

214.   Plaintiff FUSCO hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

215.   Plaintiff FUSCO alleges the Class Vehicles came with a Bumper-to-Bumper warranty and the Cadillac Shield warranty which covered the Leaking Sunroof Defect which was caused by the workmanship and/or materials in the Class Vehicles.

216.   According to Defendant's express warranty for the 2010-2013 Cadillac SRX model year vehicles ("Class Vehicles") the vehicles are subject to a 48-month (4-year), 50,000 mile Bumper-to-Bumper Limited Warranty with no deductible.   Plaintiff alleges the "Bumper-to-Bumper Limited Warranty" covers vehicles registered in the U.S. and Canada from the date the

vehicle is first delivered until it reaches 4 years or 50,000 miles (whichever occurs first). It covers the vehicle from bumper to bumper on any vehicle defect related to materials or workmanship.

217.    Defendant's stated warranty is an "express warranty" under New York law.  NYUCC §2-313.

218.    Defendant provided all purchasers and/or leasees of Class Vehicles with the express warranty described herein which became a part of the basis of the bargain and a part of the purchase or lease contract between the class members and Defendant.

219.    The seals, hoses and all other parts, components, materials, and/or workmanship associated with the manufacture, installation and/or design of the Leaking Sunroof Defect were originally supplied by Defendant.

220.    The Class Vehicles are defective in that they suffer from the Leaking Sunroof Defect which causes the sunroofs to fail under normal and foreseeable use.

221.    The Leaking Sunroofs in the Class Vehicles were defective when designed, manufactured and/or installed and failed to function properly throughout the express warranty period.  The Leaking Sunroof Defect

continues to fail and manifest itself even after the warranty period has expired.

222.   Because the Leaking Sunroofs in Class Vehicles were and/or are defective they were substantially likely to fail during the subject vehicles' ordinary useful life.

223.   Defendant breached its express warranty when it refused to repair and/or replace the Leaking Sunroof defect in the Class Vehicles "without deductible" as stated in its express warranty and Defendant required Plaintiff and the class members to pay from their own pockets the costs of parts and/or labor to repair, replace and clean their vehicles for damage caused by the Leaking Sunroof defect.

224.   Defendant had actual and/or constructive knowledge the Leaking Sunroof Defect existed in Class Vehicles during the original "Bumper-to-Bumper" warranty.  In or about August 30, 2013, Defendant issued General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013)," which provides that "GM bulletins are intended for use by professional technicians, NOT a 'do-it-yourselfer'."   Attached as Exhibit "3" to this Class Action

Complaint is a copy of Document ID: 3610923, #PI0044D.   Defendant

therefore intended that Class Vehicles with the Leaking Sunroof Defect are

not to be repaired and/or replaced by anyone other than a professional

technician.   According to Document ID: 3610923, #PI0044D the

"Condition/Concern" is that "Some customers may comment on seeing a

water leak in the driver or front passenger floor area and/or finding the front

carpet wet."  Defendant identified "the most common causes of this concern

are: • There may be a void in the cowl seam sealer, in the corners below the

sunroof drain hose grommets. • The sunroof front drain hose grommet(s)

may not be connected or fully sealed in the cowl panel or at the sunroof frame

spigot. • The sunroof front drain hoses are mis-routed or are too short, and

display a higher level of tension.  This higher tension may tend to cause a

future disconnect or unseating of the grommet."   Defendant stated in

Document ID: 3610923, #PI0044D that "This PI has been revised to update the

Condition/Concern, Recommendation/Instructions sections and update the

Warranty Information with the Global Labor Code (GLC). Please discard

PI0044C."  Defendant also identified in Document ID: 3610923, #PI0044D the

labor operation and parts necessary to repair the Leaking Sunroof Defect

under warranty.  *See*, Exhibit "3" at pg 7.

225.   Likewise, in or about September 2013, also within the initial Bumper-to-Bumper Limited Warranty period of the Class Vehicles, Defendant issued Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, which provided information relating to the Leaking Sunroof defect.  Attached hereto as Exhibit "4" is a copy of SB-10052823-4367, Bulletin No. PI0044D. According to Service Bulletin PI0044D the "Condition/Concern" is that "Some customers may comment on seeing a water leak in the driver or front passenger floor area and/or finding the front carpet wet."   Defendant identified "the most common causes of this concern are: • There may be a void in the cowl seam sealer, in the corners below the sunroof drain hose grommets. • The sunroof front drain hose grommet(s) may not be connected or fully sealed in the cowl panel or at the sunroof frame spigot. • The sunroof front drain hoses are mis-routed or are too short, and display a higher level of tension.  This higher tension may tend to cause a future disconnect or unseating of the grommet."  Defendant stated in Service Bulletin No. PI0044D that "This PI has been revised to update the Condition/Concern, Recommendation/Instructions sections and update the Warranty Information

with the Global Labor Code (GLC). Please discard PI0044C." Defendant also identified in Service Bulletin No. PI0044D the labor operation and parts necessary to repair the Leaking Sunroof defect under warranty. *See*, Exhibit "4" at pg 6.

226. Moreover, Defendant then issued Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, which provided information relating to the Leaking Sunroof (see, Exhibit "1"), as well as issuing Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U)" (see, Exhibit "3"), at all times Defendant is and has been aware of the Leaking Sunroof Defect and its breach of its express warranty as applied to the Class Vehicles.

227. Plaintiff FUSCO and the class members have been and continue to be damaged by Defendant's breach of its express warranty, including bearing the costs of repairing and/or replacing the Leaking Sunroof Defect, and have suffered actual damages in an amount according to proof at trial.

228.   Plaintiff FUSCO and the class members are entitled to legal and equitable relief against Defendant including damages, specific performance, rescission, costs of suit, and other relief as appropriate.

## XV.

## TENTH CAUSE OF ACTION

### (Violation of The Magnuson-Moss Warranty Act)
### [15 U.S.C. §2301, *et seq.*]

229.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

230.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

231.   The Cadillac SRX vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

232.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its written warranties, implied warranties and/or service contracts.

233. Defendant GM is a "supplier" and "warrantor" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

234. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

235. Defendant GM provided Plaintiffs and the other Class members with express and implied warranties of merchantability in connection with the purchase or lease of their vehicles within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the warranties of merchantability, GM warranted that the Cadillac SRX Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

236. Defendant GM breached its implied warranties, as described in more detail above, and is therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share common design defects in that they are equipped with a defective sunroof that leaks water into the passenger compartment of the consumer's vehicle

and causes wet/saturated carpet, wet/saturated padding between the firewall and instrument panel assembly, and which can result in a safety risk from damage to the vehicle's interior components, including wiring and electronic modules, and malfunction of the rear lift gate as herein alleged. Defendant GM identifies these safety hazards in its Customer Satisfaction Bulletin #14225 (Jan. 14, 2015). See, Ex. 5, "Condition." Defendant GM has therefore admitted the Class Vehicle suffer from the Leaking Sunroof Defect and that the defect results in severe quality and safety issues. Notwithstanding its express knowledge of the Leaking Sunroof Defect and the safety issues is causes Defendant GM refuses to cover repair or replacement costs.

237. In its capacity as a warrantor, Defendant GM had knowledge of the inherent defect in the Class Vehicles. Any effort by Defendant GM to limit the express and/or implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Leaking Sunroof Defect is null and void.

99

238. Any limitations Defendant GM might seek to impose on its warranties are procedurally unconscionable. There was unequal bargaining power between Defendant GM and Plaintiffs and the other Class members, as, at the time of purchase and lease, Plaintiffs and the other Class members had no other options for purchasing warranty coverage other than directly from Defendant GM.

239. Any limitations Defendant GM might seek to impose on its warranties are substantively unconscionable. Defendant GM knew the Class Vehicles were defective and would continue to pose safety risks and quality concerns after the warranties purportedly expired. Defendant GM failed to disclose these defects to Plaintiffs and the other Class members. Thus, Defendant GM's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

240. Plaintiffs and each of the other Class members have had sufficient direct dealings with either Defendant GM or its agents (dealerships) to establish privity of contract between Defendant GM, on the one hand, and Plaintiffs and each of the other Class members, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the

other Class members are intended third-party beneficiaries of contracts between GM and its dealers, and specifically, of Defendant GM's express and/or implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit end-use consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

241.   Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendant GM notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Fed. R. Civ. Pro. Rule 23.

242.   Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Defendant GM is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not reaccepted their Class Vehicles by retaining them.

243.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including but not limited to cost diminution in value of their vehicles, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

244.   Plaintiffs seek the establishment of a GM-funded program for Plaintiffs and Class members to recover out of pocket costs incurred in attempting to rectify the Leaking Sunroof Defect in their vehicles.

/ / /

/ / /

/ / /

## XVI.

## <u>ELEVENTH CAUSE OF ACTION</u>

### (**Unjust Enrichment**)

245.   Plaintiffs hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

246.   Defendant has unjustly benefitted and been enriched by refusing to honor and abide by its Bumper-to-Bumper and Cadillac Shield warranties with regard to the Leaking Sunroof Defect in the Class Vehicles.

247.   Defendant's actions resulted in Plaintiffs and the Class Members paying out of their own pockets the costs of inspection and repair of the Leaking Sunroof Defect in the Class Vehicles.

248.   Equity and good conscience dictate and require Defendant restore to Plaintiffs and the Class Members the monies they have paid out of to repair the Leaking Sunroof Defect in the Class Vehicles expenses which should have been covered by Defendant under warranty and at no cost to Plaintiffs and the Class Members.

/ / /

/ / /

## XVII.

## <u>TWELFTH CAUSE OF ACTION</u>

## (**Declaratory Relief**)

249.   Plaintiffs hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

250.   An actual controversy has arisen and exists between Plaintiffs, individually and on behalf of the class members on the one hand, and Defendant on the other hand concerning their respective rights and duties with regard to the Leaking Sunroof Defect and the rights and duties under Defendant's express warranty as herein alleged.

251.   Defendant's express warranty constitutes a contract of adhesion, drafted by Defendant and presented in its entirety to Plaintiffs and the class members.   Defendant is one of the largest automobile manufacturing companies in the world and a large international corporation.   Plaintiffs and the members of the class by contrast are individuals.   Plaintiffs and the class members do not possess anywhere near the economic power Defendant possesses and there is no opportunity for Plaintiffs or the class members to negotiate the terms of Defendant's express warranties.

252. Because of the disparity in negotiating and economic power between Defendant and Plaintiffs and the class members, Plaintiffs and the class members are powerless to do anything other than pay out of their own pockets the costs of repairing damage caused by the Leaking Sunroof Defect despite Defendant's actual and/or constructive knowledge of the Leaking Sunroof Defect and that it is the result of a defect in the design and/or manufacture of the sunroofs the repairs and costs of which should be covered under Defendant's express warranty. Under the circumstances Plaintiffs' and the class members' only realistic option is to either pay themselves for the repair and/or correction of the Leaking Sunroof Defect or live with a water soaked, unsafe, and improperly operating vehicle.

253. Defendant's express warranty should be liberally construed in favor of Plaintiff and the class members and any ambiguities resolved against Defendant.

254. As alleged herein Defendant denies and continues to systematically deny warranty coverage for the Leaking Sunroof Defect for those Class Vehicles forcing Plaintiffs and the class members to bear the costs associated with repairing and/or replacing the Leaking Sunroof Defect even

though the Leaking Sunroofs are defective in their design and/or manufacture under normal circumstances.  Defendant should have repaired and/or replaced and should in the future repair and/or replace the Leaking Sunroofs in the Class Vehicles.

255.   Plaintiffs, individually and on behalf of the members of the class, desires a judicial declaration of their and Defendants' rights and duties.

256.   Plaintiffs, individually and on behalf of the members of the class, prays for and requests a judicial declaration the Leaking Sunroof on the Class Vehicles are covered by Defendant's express warranty which Defendant should repair and/or replace at no cost to Plaintiffs or the class members.

257.   A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs, individually and on behalf of the members of the class, may ascertain her/their rights and duties and the rights and duties of Defendant.

## XVIII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for relief as to each cause of action set forth herein as

follows:

1.      Certification of the action as a class action with respect to Plaintiffs' claims for injunctive relief and claims for damages, and appointment of Plaintiffs as the Class Representative and her counsel of record as Class Counsel;

2.      A judicial determination that the Leaking Sunroof Defect is covered by Defendant's express warranties as alleged herein;

3.      A judicial determination that the Leaking Sunroof Defect is covered by Defendant's implied warranties as alleged herein;

4.      An award of damages in the amount of monies already paid by Plaintiffs and Class members for the cost of repairing and/or replacing the Leaking Sunroof Defect on the Class Vehicles;

5.      An award of equitable relief as follows: (a) enjoining Defendant from continuing to engage in the unlawful, unfair and/or fraudulent business practices described in this complaint, (b) requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this complaint, (c) requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described in this complaint, (d) requiring

107

Defendant to provide public notice of the true nature and scope of the Leaking Sunroof Defect as complained of herein, (e) requiring Defendant to abide by the terms of its warranty and repair and/or replace the Leaking Sunroofs in the Class Vehicles, (f) requiring Defendant to provide extended warranty coverage that ensures the free replacement and/or repair of the Leaking Sunroof Defect in Class Vehicles;

6.    For restitution to Plaintiffs, individually and to all class members, in an amount according to proof at trial;

7.    An award of actual damages, or $100, whichever is greater, including but not limited to consequential damages, and treble damages in accordance with Pennsylvania's UTPCPL, 73 P.S. 201-9.2(a), or alternatively double damages, all in an amount according to proof at trial.

8.    An award of attorney fees pursuant to statute including but not limited to Pennsylvania's UTPCPL, 73 P.S. 201-9.2(a); Florida's FDUTPA, FL Stat. 501.2105; and 15 U.S.C. §2310(d)(2), according to proof;

9.    Pursuant to Michigan Compiled Laws §455.911(4), for the court to make an appropriate order: to reimburse persons who have suffered damages; to carry out a transaction in accordance with the aggrieved persons'

108

reasonable expectations; to strike or limit the application of unconscionable clauses of contracts to avoid an unconscionable result; or to grant other appropriate relief. The court after a hearing may appoint a receiver or order sequestration of the defendant's assets if it appears to the satisfaction of the court that the defendant threatens or is about to remove, conceal, or dispose of his assets to the detriment of members of the class.

10.   A declaration that any applicable statute of limitations are tolled due to Plaintiff's delay in discovery, Defendant GM's fraudulent concealment and/or that Defendant GM is estopped from relying on any statute of limitations defense.

11.   For an award exemplary or punitive damages in an amount according to proof for Defendant's breach of warranty amounting to fraudulent conduct in accordance with applicable statute;

12.   For costs of suit;

13.   Pre- and post-judgment interest on any amounts awarded; and

14.   Such other relief as the Court deems fair, just equitable and proper.

## XIX.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, individually and on behalf of all class members, hereby

demands trial of their claims by jury to the extent authorized by law.

By,

Dated: September 26, 2018        /s/ Robert A. Waller, Jr.
ROBERT A. WALLER, JR.
LAW OFFICE OF ROBERT A. WALLER,
JR.
P.O. Box 999
Cardiff-by-the-Sea, California 92007
Telephone:        (760) 753-3118
Facsimile:   (760) 753-3206
Email:        robert@robertwallerlaw.com
Attorneys for Plaintiffs and the Class

110