UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL DIVIS, et al.,

      Plaintiffs,

v.                                Case No. 18-13025
                                       Honorable Victoria A. Roberts

GENERAL MOTORS LLC,

      Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT [ECF No. 14]

## I.    INTRODUCTION

In this putative class action, five individual Plaintiffs allege that model year 2010-2013 Cadillac SRX ("SRX") vehicles have defective sunroofs that leak. Defendant General Motors LLC ("GM") moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).

As set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** GM's motion to dismiss.

## II.    BACKGROUND

The named Plaintiffs – Carol Divis ("Divis"), Brian Sirota ("Sirota"), Kathlene Scheffers ("Scheffers"), Christie Oss ("Oss"), and Antonio Fusco ("Fusco") – purchased 2010-2013 SRXs from dealerships in the following states, respectively: Pennsylvania, Florida, Michigan, Georgia, and New York.

Their cars came with an express warranty that "covers repairs to correct any vehicle defect relating to materials or workmanship occurring during the warranty period." The warranty period is four years or 50,000 miles, whichever occurs first.

Plaintiffs rely on additional language in the warranty for part of their claims. It says: "Under certain circumstances, GM . . . may provide assistance after the . . . warranty period has expired when the problem results from a defect in material or workmanship. These instances will be reviewed on a case-by-case basis."

Plaintiffs say 2011-2013 SRXs were also covered by a "Cadillac Shield" warranty. However, the "Cadillac Shield" program relates to owner benefits – like "remote vehicle diagnostics and advanced mobile apps." It does not provide additional warranty coverage.

Plaintiffs allege that "[t]he sunroofs of 2010-2013 [SRXs] leak and water intrudes into the passenger compartment of the vehicles because of a defect in the design and/or manufacture of the sunroofs and their component parts (hereinafter 'Leaking Sunroof Defect')."

Plaintiffs claim that GM's own service bulletins demonstrate that GM had actual knowledge of the Leaking Sunroof Defect and knew how to correct it during the warranty period – "as early as August 2013."

For example, on August 30, 2013, GM issued a preliminary information bulletin to GM dealerships covering 2010-2013 SRXs with the heading: "Water Leak at Driver/ Front Passenger Floor Area and/or Front Carpet Wet." According to the bulletin, the most common causes of the leaks related to the sunroof: (1) "a void in the cowl seam sealer, in the corners below the sunroof drain hose grommets"; (2) "[t]he sunroof front drain hose grommet(s) may not be connected or fully seated in the cowl panel or at the sunroof frame spigot"; and (3) "[t]he sunroof drain hoses are mis-routed or are too short . . . caus[ing] a future disconnect or unseating of the grommet."

In September 2013, GM issued a service bulletin regarding 2010-2013 SRXs; it has the same heading as the August 2013 bulletin and provides the same information.

On January 14, 2015, GM issued an internal and non-public document to GM dealerships describing a Customer Satisfaction Program (the "CSP").  According to the document: (1) "[c]ertain 2010-2012 model year Cadillac SRX[s] . . . may have a condition in which the vehicle's sunroof drain hose material may shrink due to changing environmental conditions"; and (2) if a drain hose shrinks, it could detach, leading to leaks and possible "damage [to] interior components, including wiring, electronic modules, the sound deadener and carpet."

Under the CSP, GM directed dealers "to replace the front sunroof drain hoses" in 2010-2012 (but not 2013) SRXs.  The CSP only applied to SRXs in certain states; in relevant part, those states included Florida, Georgia, New York, and Pennsylvania, but not Michigan.  The CSP document also explained to dealers that "whenever a vehicle subject to this program enters your vehicle inventory, or is in your facility for service through January 31, 2017, you must take the steps necessary to be sure the program correction has been made before selling or releasing the vehicle."  Moreover, the CSP document stated that "Dealers are to service all vehicles subject to this program at no charge to customers, regardless of mileage, age of vehicle, or ownership, through January 31, 2017."

Plaintiffs filed this case on September 26, 2018.  They allege 12 claims in the complaint and seek to represent a nationwide class and five statewide classes of individuals who purchased or leased a 2010-2013 SRX:

| Count | Plaintiff(s) | Class | Claim |
|---|---|---|---|
| 1 | Carol Divis | Pennsylvania | Pennsylvania Unfair Trade Practices and Consumer Protection Law |
| 2 | | | Breach of Warranty (Express and Implied) |
| 3 | Brian Sirota | Florida | Florida Deceptive and Unfair Trade Practices Act |
| 4 | Kathlene Scheffers | Michigan | Michigan Consumer Protection Act |
| 5 | | | Breach of Express Warranty |
| 6 | Christie Oss | Georgia | Georgia Uniform Deceptive Trade Practices Act |
| 7 | | | Breach of Express Warranty |
| 8 | Antonio Fusco | New York | New York Deceptive Practices Act, N.Y. General Business Law § 349 |
| 9 | | | Breach of Express Warranty |
| 10 | All | Nationwide | Magnuson-Moss Warranty Act |
| 11 | All | Not Specified | Unjust Enrichment |
| 12 | All | Not Specified | Declaratory Relief |

Plaintiffs allege they were harmed and that they "continue to be harmed and suffer actual damages" because: (1) their SRXs manifested, and continue to manifest, the Leaking Sunroof Defect, causing them to incur costs to repair the defect; (2) GM has not provided a permanent remedy for the defect; and (3) GM refuses to repair sunroof leaks under the expired warranty.

Plaintiffs seek damages in the amount they paid to repair the Leaking Sunroof Defect and other damages permitted by law. They also seek a declaration that the Leaking Sunroof Defect is covered by GM's express warranty and that GM must repair the defect in their cars under the warranty.

GM filed a motion to dismiss the complaint. The motion is fully briefed.

On March 1, 2019, GM filed a notice of supplemental authority, notifying the Court of a recent decision from the Southern District of California in which the court granted GM's motion to dismiss claims similar to those alleged by Plaintiffs – including a breach of express warranty claim, fraud claims, an unjust enrichment claim, and a request for declaratory relief – based on the same alleged Leaking Sunroof Defect in model year 2010-2013 SRXs. *See Gaines v. Gen. Motors Co.*, No. 17CV1351-LAB (JLB), 2019 WL 913088 (S.D. Cal. Feb. 25, 2019). Plaintiffs' counsel in *Gaines* and this case are the same. The *Gaines* court dismissed the breach of express warranty claim with prejudice and the remaining claims without prejudice. *See id.* at *5.

## III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. The federal rules require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible where the facts allow the Court to infer that the defendant is liable for the misconduct alleged. *Id.* This requires more than "bare assertions of legal conclusions"; a plaintiff must provide the "grounds" of his or her "entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *Twombly*, 550 U.S. at 555 (while detailed factual allegations are not required, a pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action"). Ultimately, the question

is "'not whether [the plaintiff] will ultimately prevail' . . . but whether [the] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (citations omitted).

In deciding a motion under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pled factual allegations, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

## IV.  ANALYSIS

### A.  EXPRESS WARRANTY CLAIMS

Plaintiffs Divis (Count Two), Scheffers (Count Five), Oss (Count Seven), and Fusco (Count Nine) allege breach of express warranty claims under Pennsylvania, Michigan, Georgia, and New York law, respectively. Plaintiffs claim that they experienced the Leaking Sunroof Defect in their SRXs and GM breached the express warranty by refusing to repair the defect under warranty.

GM says Plaintiffs' express warranty claims fail because: (1) Plaintiffs fail to allege that they were "denied warranty repairs *during the warranty period* (four years or 50,000 miles, whichever came first)"; and (2) the warranty, by its express terms, covers repairs only during the warranty period.

Plaintiffs do not contest the first omission in their pleadings. Rather, they base their express warranty claims on these three theories: (1) because "GM possessed

actual knowledge of the existence of the Leaking Sunroof Defect . . . during the original warranty periods" – i.e., four years or 50,000 miles – GM must provide warranty coverage for repairs made after the applicable time or mileage limits pass; (2) notwithstanding the four years or 50,000 miles limitation, the warranty promised "additional assistance after the . . . warranty period expired" for this defect, and GM offered the January 14, 2015 CSP that applied to some, but not all, of Plaintiffs' SRXs; and (3) with respect to Plaintiff Divis, GM breached the warranty by failing to properly repair the defect because, after GM repaired her sunroof under warranty in April 2014, her sunroof began leaking again in June 2017.

Plaintiffs' arguments lack merit.

### 1. Neither the Warranty Nor the CSP Provides Coverage for Repairs Occurring After the Four Years or 50,000 Miles Limitation Expired

Plaintiffs rely on a provision of GM's warranty and the CSP offered by GM to contend that GM promised, and therefore was required, to provide "additional assistance" (i.e., free repairs) for the Leaking Sunroof Defect after the warranty period expired.

The provision of the warranty Plaintiffs refer to states: "Under certain circumstances, GM . . . may provide assistance after the . . . warranty period has expired when the problem results from a defect in material or workmanship.  These instances will be reviewed on a case-by-case basis."  Plaintiffs say the "assistance" under that provision was offered by GM through the limited CSP.

Plaintiffs' contention that GM promised to provide "additional assistance" (i.e., coverage) for the Leaking Sunroof Defect after the warranty period expired

misconstrues the language of the warranty. Moreover, their claim that the CSP constituted part of GM's warranty or was mandatory is unsupported.

While the CSP may have been a method through which GM covered defects after expiration of the warranty period, the warranty itself states in plain terms that GM *may* provide assistance after the warranty period expired; it does not say that GM *will* provide coverage after expiration of the warranty period. Moreover, no other part of the warranty mandated that GM offer the CSP, and the CSP itself was not a warranty. It was a voluntary program that GM elected to offer.

The plain language of the warranty provides that the warranty coverage ends after four years or 50,000 miles, whichever occurs first. Neither the warranty nor the CSP required GM to cover the Leaking Sunroof Defect after Plaintiffs' warranties expired. Accordingly, Plaintiffs' claim that the above excerpt from the warranty and/or the CSP required GM to repair the Leaking Sunroof Defect in Plaintiffs' cars under their expired warranties fails as a matter of law.

**2. Plaintiffs' Allegation that GM Knew About the Leaking Sunroof Defect Does Not Save Their Breach of Express Warranty Claims**

Plaintiffs admit they failed to allege that GM denied them warranty coverage during the warranty period. Therefore, their express warranty claims fail. The law is clear that once the warranty period expires, GM was not required to provide free repairs under the warranty. *See In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, No. MDL 1718, 2007 WL 2421480, at *7 (E.D. Mich. Aug. 24, 2007) ("'To allow a customer to seek damages for breach of an express warranty beyond the limits specified in that warranty would in effect compel the manufacturer to insure all latent defects for the entire life of the product and would place a burden on the manufacturer

for which it did not contract.'" (citation omitted)); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("The general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006) and *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir.1986))); *Gaines*, 2019 WL 913088, at *4 (dismissing breach of express warranty claim where plaintiff's sunroof leak occurred after the warranty period expired).

Plaintiffs' allegation that GM knew about the defect during the warranty period and/or at the time of sale does not save their express warranty claims. As the Ninth Circuit explained in *Clemens*:

> Every manufactured item is defective at the time of sale in the sense that it will not last forever; the flip-side of this original sin is the product's useful life. If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires. The product has performed as expressly warranted. Claims regarding other buyer expectations and the manufacturer's state of mind properly sound in fraud and implied warranty.

*Clemens*, 534 F.3d at 1023. *See also McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1359 (N.D. Ga. 2013) ("[T]he Court holds that Defendants' knowledge of the alleged defect at the time of sale . . . is insufficient to render the [warranty's] time and mileage limitations unconscionable."); *Daugherty*, 144 Cal. App. 4th at 830 ("Several courts have expressly rejected the proposition that a latent defect, discovered outside the limits of a written warranty, may form the basis for a valid express warranty claim if the warrantor knew of the defect at the time of sale." (citations omitted)); *Gaines*, 2019 WL 913088, at *4 (allegation that GM knew about defect did not save express warranty claim).

Plaintiffs' reliance on *Alberti v. Gen. Motors Corp.*, 600 F. Supp. 1026 (D.D.C. 1985), does not change the outcome; that case has no binding effect and has been rejected by other courts. *See, e.g.*, *Clemens*, 534 F.3d at 1023; *Abraham*, 795 F.2d at 250; *Daugherty*, 144 Cal. App. 4th at 831. *Alberti* is not persuasive; the Court declines to follow it.

### 3. Plaintiff Divis' "Failure to Properly Repair" Claim

Finally, like Plaintiffs' main breach of express warranty claims, Divis' purported "failure to properly repair" claim also fails.

Divis purchased her SRX in 2009. She experienced a sunroof leak in 2014, which GM covered under warranty. The parties do not explain why Divis' 2014 leak was covered beyond the warranty period. In June 2017, well after her warranty expired, Divis' sunroof began leaking again. Divis summarily asserts that GM breached the warranty by failing to properly repair her sunroof.

Divis fails to allege how this constitutes a breach of the warranty or what provision of the warranty it violates. Considering that the June 2017 leak occurred over seven years after Divis purchased her car, it appears GM satisfied the terms of the warranty.

But the Court need not reach the merits of this claim. Divis does not provide any support for this claim in her brief; and, as GM points out, Divis does not even allege this claim in the complaint.

Plaintiffs' breach of express warranty claims fail as a matter of law.

The Court GRANTS GM's motion to dismiss Plaintiffs' breach of express warranty claims and DISMISSES Counts Two (with respect to breach of express warranty claim), Five, Seven, and Nine of the complaint.

## B.    IMPLIED WARRANTY CLAIM UNDER PENNSYLVANIA LAW

Although it appears she may not have intended to plead such a claim, Plaintiff Divis summarily alleges that GM breached its implied warranty of merchantability under Pennsylvania law.

GM says Divis' implied warranty claim fails for several reasons, including that the complaint fails to plausibly allege that her sunroof was not merchantable at the time of sale.  Divis fails to respond to GM's arguments.

The Court DISMISSES Divis' implied warranty claim under Pennsylvania law (Count Two).  She fails to allege sufficient facts to state a plausible breach of implied warranty claim.  Count Two is dismissed in its entirety, *see supra* Section IV(A) (dismissing Count Two with respect to breach of express warranty claim).

## C.    MAGNUSON-MOSS WARRANTY ACT ("MMWA") CLAIM

Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claim alleges that the Leaking Sunroof Defect breached GM's express and implied warranties.

GM says Plaintiffs' "claims under the Magnuson-Moss Act stand or fall with [their] express and implied warranty claims under state law."  *See Clemens*, 534 F.3d at 1022. They fall here says GM, because Plaintiffs have not pled a plausible claim for breach of express or implied warranty under state law.

Plaintiffs agree that a MMWA claim is dependent on a breach of express or implied warranty claim under state law.

11

Plaintiffs fail to allege a plausible breach of express or implied warranty claim under state law. Thus, their MMWA claim (Count Ten) fails as a matter of law and is DISMISSED.

## D. CONSUMER PROTECTION CLAIMS

GM moves to dismiss Plaintiffs' consumer protection claims under state law on several different grounds. The Court addresses each.

### 1. Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count One)

GM moves to dismiss Plaintiffs' claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), arguing that: (1) the claim is barred by Pennsylvania's economic loss rule; and (2) Plaintiff Divis fails to allege essential elements necessary to state a plausible UTPCPL claim.

#### a. The Economic Loss Doctrine

Divis demonstrates that – at a minimum – courts are split on whether the economic loss doctrine bars her UTPCPL claim. *See Persad v. Ford Motor Co.*, No. 17-12599, 2018 WL 3428690, at *7-8 (E.D. Mich. July 16, 2018) ("[A]lthough the Third Circuit held, based on its prediction at the time of how the Pennsylvania Supreme Court would rule on the issue, that the economic loss doctrine applies . . . to claims under the UTPCPL[,] . . . numerous other [more recent decisions] . . . doubt the soundness of [that] prediction. . . . [T]he more recent cases have the better of the argument. Thus, the Court concludes that the economic loss doctrine does not call for dismissal of the Pennsylvania Plaintiffs' UTPCPL claims." (citations omitted)). Because the Court agrees with GM's second argument – i.e., that Divis fails to state a plausible UTPCPL

claim – the Court need not resolve the split in authority.  The Court assumes without finding that the economic loss doctrine does not bar Divis' UTPCPL claim.

### b.  Divis Fails to State a Claim under Pennsylvania's UTPCPL

"The UTPCPL generally prohibits unfair methods of competition and deceptive acts or practices in the conduct of trade or commerce."  *Slapikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D. Pa. 2014) (citing 73 Pa. Stat. § 201-3).  "The UTPCPL lists twenty specifically prohibited practices in § 201-2(4)(i)-(xx), and also contains a catch-all provision in § 201-2(4)(xxi) which prohibits '[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.'"  *Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 509 (E.D. Pa. 2009) (citation omitted).  "To establish liability under the UTPCPL's catchall provision a plaintiff must present evidence showing: (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss."  *Slapikas*, 298 F.R.D. at 292

Divis alleges GM violated three provisions of the UTPCPL: (1) § 201-2(4)(vii), which prohibits "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another"; (2) § 201-2(4)(xiv), which prohibits "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made"; and (3) § 201-2(4)(xxi), which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

Specifically, Divis alleges GM violated § 201-2(4)(vii) by representing that 2010-2013 SRXs were of a particular standard or quality when they were not.  She says GM violated § 201-2(4)(xiv) by denying warranty coverage for her sunroof leak in 2017 and excluding her car from the CSP.  Finally, Divis claims GM violated the UTPCPL's "catchall" provision, § 201-2(4)(xxi), by denying warranty coverage, "by concealing and failing to disclose the existence of the Leaking Sunroof Defect" and by "limiting the scope of the subsequent Customer Satisfaction program without explanation, leading those vehicle owners to believe their vehicles were not affected by the Leaking Sunroof Defect."

GM says Divis fails to state an actionable claim under the UTPCPL.  The Court agrees.

As to § 201-2(4)(vii), GM argues that Divis' allegations are entirely conclusory, and Divis does not allege facts showing that GM ever made any specific representations to her.  Plaintiffs do not respond to this argument.  Divis' conclusory allegation is insufficient to state a plausible violation of § 201-2(4)(vii).

Divis' allegations that GM denied warranty coverage for her sunroof leak in 2017 and excluded her car from the CSP do not state a violation of the UTPCPL, either.  As GM states, Divis does not, and cannot, allege that GM did not comply with the terms of its warranty because: (1) the terms of the warranty and the CSP provided time and geographic limits that lawfully excluded her vehicle; and (2) the warranty terms did not impose any obligation on GM to expand coverage under the warranty or the CSP to include her vehicle.

Divis acknowledges that GM repaired her 2014 sunroof leak for free under the warranty, but she complains that GM did not cover her 2017 sunroof leak under warranty. The 2017 leak occurred over seven years after Divis purchased her car, well after the warranty expired. Since the warranty expired, declining warranty coverage in 2017 was not a deceptive trade practice as a matter of law. *See Gaines*, 2019 WL 913088, at *5 ("[Plaintiff's] claim that failing to honor the expired warranty amounts to deception is conclusory and, as discussed above, meritless.").

Divis' claims under the "catchall" provision of the UTPCPL also fail. With respect to her failure to disclose claim, Divis does not allege when GM failed to disclose the existence of the Leaking Sunroof Defect. If she intended to allege that GM failed to disclose the defect at or before the time she purchased her car, the claim fails because Plaintiffs allege that GM became aware of the defect "as early as August 2013" – well after Divis' 2009 purchase. To the extent Divis alleges that GM did not disclose the defect after her purchase, GM correctly argues that the claim fails for two reasons – i.e., Divis already knew about the defect after experiencing it herself in 2014 (when GM covered the repairs under warranty), and Divis fails to allege facts showing that GM had a duty to disclose at that time.

Finally, with respect to Divis' allegation regarding the limited scope of the CSP, although Divis says GM's failure to explain the scope of the CSP caused Plaintiffs to believe that their cars were not affected by the Leaking Sunroof Defect, Plaintiffs acknowledge in their response brief that the CSP documents were "internal" and "non-public." Thus, the CSP documents and/or the applicability of the CSP could not have caused Plaintiffs confusion or given them an actionable claim.

Divis fails to state a plausible claim under Pennsylvania's UTPCPL. Accordingly, GM's motion to dismiss Count One is GRANTED.

### 2. Florida Deceptive and Unfair Trade Practices Act (Count Three)

GM says the Court should dismiss Plaintiffs' claim under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"), because Plaintiff Sirota fails to plead the elements of the claim with the particularity required by Rule 9(b).

"FDUTPA forbids '[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Vazquez v. Gen. Motors, LLC*, No. 17-22209-CIV, 2018 WL 447644, at *6 (S.D. Fla. Jan. 16, 2018) (quoting Fla. Stat. § 501.204). To plead a consumer claim for damages under FDUTPA, a plaintiff must sufficiently allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Id.* (citation omitted).

Federal Rule of Civil Procedure 9(b) provides the operative pleading standard for a FDUTPA claim. *Vazquez*, 2018 WL 447644, at *6. It imposes a heightened pleading standard which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a complaint must state:

> '(1) precisely what statements were made in what documents or oral representations or what omissions were made[;] (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same[;] (3) the content of such statements and the manner in which they misled the plaintiff[;] and (4) what the defendants obtained as a consequence of the fraud.'

*Vazquez*, 2018 WL 447644, at *6 (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

Sirota alleges GM violated FDUTPA by manufacturing and selling 2010-2013 SRXs with the Leaking Sunroof Defect without disclosing the existence of the defect. Sirota establishes that, on its face, this type of claim is actionable under FDUTPA. *See Horton v. Hoosier Racing Tire Corp.*, No. 8:15-CV-1453-T-17TGW, 2015 WL 12859316, at *3 (M.D. Fla. Dec. 15, 2015) (finding that plaintiff stated a FDUTPA claim by alleging that defendant "knowingly and intentionally concealed the fact that [a product] suffer[s] from a design defect, which was not readily discoverable" (internal alterations omitted)); *Matthews v. Am. Honda Motor Co.*, No. 12-60630-CIV, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012) ("Florida courts have recognized that a FDUTPA claim is stated where the defendant knowingly fails to disclose a material defect that diminishes a product's value.").

Nevertheless, GM says Sirota's FDUTPA claim is deficient under Rule 9(b) because he fails to allege the requisite facts described in *Vazquez* and *Brooks*, *supra*. Specifically, GM says Sirota "does not allege that he ever had had any pre-purchase contact with GM in which GM made statements to him, or omitted to disclose relevant information, nor does he allege the 'time and place' or identify 'the person responsible' for the statement(s) or omissions(s). He also does not allege what GM (which was not a party to the sale) 'obtained as a consequence of the fraud.'"

Sirota attempts to rebut this argument by citing to specific paragraphs in the complaint. However, the allegations he cites are conclusory and merely state that GM failed to disclose the existence of the Leaking Sunroof Defect.

As GM argues, Sirota fails to point to any pre-purchase communication he had with GM or a pre-purchase GM advertisement he saw in which GM should have

disclosed the existence of the Leaking Sunroof Defect.  Thus, Sirota failed to allege the time and place of the omission of material fact, as required by Rule 9(b).  *See Vazquez*, 2018 WL 447644, at *6; *Brooks*, 116 F.3d at 1371.

Furthermore, GM is correct that Sirota fails to allege what GM obtained as a result of the failure to disclose.  Sirota purchased a used 2010 SRX in August 2016.  GM says it was not a party to the sale.  Sirota does not allege what GM received as a result of its failure to disclose, and he does not address this argument in his response.

Because Sirota fails to allege his FDUTPA claim with the particularity Rule 9(b) requires, the Court GRANTS GM's motion to dismiss Count Three.

### 3.  Michigan Consumer Protection Act (Count Four)

GM says Plaintiffs' claim under the Michigan Consumer Protection Act ("MCPA") fails for four reasons, one of which is that automobile sales are exempt from the MCPA.  Because the Court agrees that car sales are exempt from the MCPA, *see Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 799-800 (E.D. Mich. 2019), the Court need not address GM's other arguments.

The MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  Mich. Comp. Laws § 445.904(1).  The Michigan Supreme Court construes this exemption broadly, finding that "the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited."  *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 210 (2007) (citation and internal quotation marks omitted).

The general transaction in this case (i.e., the sale of a new car by a licensed dealer) is one specifically authorized and regulated by law; thus, it is exempt from the MCPA. *See Matanky*, 370 F. Supp. 3d at 799-800; *Jimenez v. Ford Motor Credit Co.*, 2015 WL 9318913, at *7 (Mich. Ct. App. Dec. 22, 2015) (finding that the sale of a motor vehicle by a licensed dealer was an exempt transaction under the MCPA because it was "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States"); *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 WL 9775018, at *3 (E.D. Mich. Oct. 21, 2016) (dismissing MCPA claim upon finding that Toyota's alleged deceptive advertising conduct was exempt from the MCPA because Michigan "regulates how car wholesalers like Toyota advertise automobiles" and "regulates the content of general automobile advertisements").

GM's motion to dismiss the MCPA claim is GRANTED; Count Four is dismissed.

### 4. Georgia Uniform Deceptive Trade Practices Act (Count Six)

GM says the Court should dismiss Plaintiffs' claim under Georgia's Uniform Deceptive Trade Practices Act ("GUDTPA"), O.C.G.A. § 10–1–370, *et seq.*, because Plaintiff Oss merely claims that GM failed to honor the expired warranty (i.e., fix her sunroof after the warranty period expired), which is not a deceptive trade practice.

Plaintiffs say GM ignores that Oss also alleged that GM's conduct of fraudulently concealing the existence of the Leaking Sunroof Defect from her and other Georgia consumers violates the GUDTPA.

Plaintiffs are wrong. Although the complaint generally incorporates prior allegations, the allegations under the GUDTPA claim are deficient because they fail to

19

identify the actions or conduct by GM that allegedly violate the GUDTPA.  Rather, the complaint merely asserts that "Plaintiff OSS and the Class Members allege Defendant willfully engaged in a trade practice knowing it to be deceptive."  Because this conclusory statement does not state a plausible claim under the GUDTPA, this claim must be dismissed under Rule 12(b)(6).

This claim also must be dismissed because relief under GUDTPA – which is limited to an injunction – "requires the allegation (and presentation of evidence showing) of a likelihood of future harm by a deceptive trade practice."  *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1293 (N.D. Ga. 2018); O.C.G.A. § 10–1–373(a) ("A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable.").  However, Oss admits in her response brief that – although she alleged that she *was* harmed by GM's concealment of the Leaking Sunroof Defect – she does not face future harm by GM's concealment of the defect.  Accordingly, she is not entitled to relief under the GUDTPA, *see id.*, and no other named plaintiff represents the purported Georgia class.

The Court GRANTS GM's motion to dismiss Oss's GUDTPA claim.  Count Six is dismissed.

### 5.  New York Deceptive Practices Act (Count Eight)

New York General Business Law § 349 ("§ 349") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" within New York.  *Id.*; *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 304 (S.D.N.Y. 2012).  To state a claim under § 349, a plaintiff must allege: "(1) a

deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act." *Fleisher*, 858 F. Supp. 2d at 304 (citation omitted).

Plaintiff Fusco alleges GM violated § 349 by denying warranty coverage for the Leaking Sunroof Defect despite knowing the defect existed as early as August 2013. Fusco also alleges that GM's failure to inform him of the existence of the defect "was conduct that was misleading in a material respect," in violation of § 349.

GM moves to dismiss Fusco's § 349 claim on several grounds. GM says the claim must be dismissed because the injury sought under the § 349 claim must be independent of the loss alleged under Fusco's breach of warranty claim. *See Fleisher*, 858 F. Supp. 2d at 304 ("A § 349 claim must . . . allege injury resulting from the deceptive act or practice. . . .The loss suffered as a result of [defendant's] alleged breach of § 349 must be independent of the loss alleged under the [plaintiff's] breach of contract claim."). GM says the only recoverable injury Fusco alleges under his § 349 claim is the same as alleged under his breach of warranty claim – i.e., $750 in costs to repair his sunroof leak. Stated differently, GM claims that Fusco has not alleged any injury under his § 349 claim that is independent of the injury from GM's refusal to repair the Leaking Sunroof Defect under warranty.

Moreover, as to the denial of warranty coverage part of the Fusco's § 349 claim, GM says denying coverage under the expired warranty is not deceptive because there is nothing deceptive about the warranty's time and mileage limits. With respect to the failure to disclose claim, GM summarily states that Fusco does not allege any contact with GM that would have provided an occasion for disclosure.

### a.  Denial of Warranty Coverage

The Court agrees with GM with respect to the denial of warranty coverage portion of Fusco's claim.  As discussed above, because the warranty had clear time and mileage limits and did not require GM to make free repairs after the warranty expired, GM's failure to cover repairs to Fusco under the *expired* warranty was not a deceptive or misleading act or practice.  *See Gaines*, 2019 WL 913088, at *5 ("[Plaintiff's] claim that failing to honor the expired warranty amounts to deception is conclusory and, as discussed above, meritless.").

The Court DISMISSES that part of Fusco's § 349 claim.

Moreover, the Court DISMISSES this claim to the extent Fusco seeks damages for the amount he paid to repair his sunroof, since that alleged injury is not independent of the loss alleged under the breach of warranty claim.  *See Fleisher*, 858 F. Supp. 2d at 304.

### b.  Failure to Disclose Leaking Sunroof Defect

GM's arguments to dismiss the § 349 claim with respect to Fusco's allegation that GM's failure to inform him of the existence of the defect "was conduct that was misleading in a material respect" are unavailing.

First, GM's argument that Fusco does not allege any contact with GM that would have provided an occasion for disclosure is too conclusory to succeed.  The extent of GM's argument on this is one sentence, in a footnote, in its motion, and two sentences in its reply brief which essentially restate the sentence in its motion.  GM does not provide any law to support its arguments.  Moreover, notwithstanding the deficiency of

GM's argument, the Court finds that Fusco alleges sufficient facts to state a § 349 claim based on failure to disclose.

A seller's failure to disclose may form the basis of a § 349 claim. *Kommer v. Ford Motor Co.*, No. 17-CV-0296, 2018 WL 3727353, at *3 (N.D.N.Y. Aug. 6, 2018) (citation omitted). "To state a failure to disclose claim, a plaintiff must plausibly allege that (1) 'a business alone possessed material information that is relevant to the consumer'; and (2) it 'failed to provide this information.'" (citation and internal brackets omitted). "An omission is material if the [defendant's] failure to disclose is likely to mislead a reasonable consumer." *Id.* Unlike some consumer protection claims sounding in fraud, "claims brought pursuant to [§ 349] are 'not subject to the pleading-with-particularity requirements of Rule 9(b) but need only meet the bare-bones notice-pleading requirements of Rule 8(a).'" *Id.* (quoting *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)).

Fusco alleges that GM was aware of the Leaking Sunroof Defect as early as August 2013 based upon its internal service bulletins, such that GM had knowledge of the defect before he purchased his SRX in January 2014. This is sufficient to allege the "knowledge" element. *See Kommer*, 2018 WL 3727353, at *3-4 (finding that: (1) a technical service bulletin ("TSB") that acknowledged the alleged defect "create[d] a plausible inference that Ford, the TSB's author, knew of the defects in [plaintiff's truck] when [he] purchased [it]. This is all Rule 8 requires"; and (2) "it is plausible that Ford had exclusive information regarding the [alleged] defect" based on allegation that the "TSB was only disclosed to Ford dealerships and was not distributed to anyone outside the company").

Fusco also sufficiently alleges that the existence of the defect was material; he claims that: (1) had he been informed of the Leaking Sunroof Defect, he would not have purchased the SRX or he would have requested that it be inspected and/or repaired before purchase; and (2) no reasonable consumer would have purchased a 2010-2013 SRX knowing of the existence of the Leaking Sunroof Defect. *See Kommer*, 2018 WL 3727353, at *4.

Furthermore, contrary to GM's argument that Fusco has not alleged an injury under his § 349 claim independent of the injury from GM's refusal to repair the Leaking Sunroof Defect under warranty, Fusco alleges that: (1) he overpaid for his SRX because the Leaking Sunroof Defect made the car less valuable than the purchase price; and (2) had he been told about the defect, he would have paid less for his car.

GM argues that Fusco "does not explicitly claim damages for diminished value." The Court disagrees. In a "Prayer for Relief" section at the end of the complaint that applies "to each cause of action," Plaintiffs request "[a]n award of equitable relief" requiring GM to: (1) "make full restitution of all monies wrongfully obtained as a result of the conduct described in this complaint"; and (2) "disgorge all ill-gotten gains flowing from the conduct described in this complaint."

GM also attempts to show that these types of losses are not recoverable under § 349. In doing so, it relies on *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999). However, GM fails to recognize that *Small* rejected plaintiffs' injury claim because the "plaintiffs [did] not allege that the cost of cigarettes was affected by [defendant's] alleged misrepresentation." *Id.* Unlike the plaintiffs in *Small*, Fusco alleges that GM's failure to disclose the alleged Leaking Sunroof Defect did affect the purchase price of the SRXs.

Moreover, contrary to GM's argument, several cases recognize that this type of "price premium" claim is actionable. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (acknowledging validity of "price premium" claim and explaining that such a claim involves plaintiffs showing they "paid more than they would have for the good but for the deceptive practices of the defendant-sellers"); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (finding a sufficiently-pled § 349 injury where plaintiff alleged that he would not have paid the price charged for "fat-free" milk had he known it contained fat); *Lazaroff v. Paraco Gas Corp.*, 967 N.Y.S.2d 867, 2011 WL 9962089, at *6 (Sup.Ct. Feb. 25, 2011) (finding a sufficiently-pled § 349 injury where plaintiff alleged that he would not have paid the price charged for a "20 pound" propane cylinder had he known it contained only 15 pounds of propane).

Thus, GM's arguments to dismiss Fusco's § 349 claim in its entirety fails.

Fusco's § 349 claim survives with respect to his allegation that GM's failure to disclose the existence of the Leaking Sunroof Defect was misleading in a material respect. The request for damages under § 349 is limited to the claim that Fusco and New York class members overpaid for their SRXs based on the allegation that the Leaking Sunroof Defect made the car less valuable than the purchase price. In addition to showing that the defect diminished the value of their cars, the Court foresees that Fusco and class members must show that they would have paid less for their SRX or not purchased it had GM informed them of the defect.

But – to the extent Fusco requests an order enjoining GM's alleged "wrongful acts or practices" under § 349 – the claim is DISMISSED. Fusco requests an order

prohibiting GM from: (1) denying coverage under an expired warranty; and (2) concealing the Leaking Sunroof Defect.

Because GM's denial of coverage after the warranty expires is not a deceptive practice, the request to enjoin this practice is unsupported and dismissed as a matter of law.  The request for an order prohibiting GM from concealing the defect in the future is moot.  "In model years 2014 and newer, the sunroof has been redesigned and any defect corrected.  Furthermore, there is no reason to suppose either [Fusco] or the putative class members would benefit from such an injunction [since they already have discovered its existence]."  *See Gaines*, 2019 WL 913088, at *5.

Finally, for sake of clarity going forward, to the extent Fusco seeks to establish a New York class, the class will be limited to individuals who purchased a new 2013 SRX after August 30, 2013 (i.e., the date GM issued its first bulletin concerning the alleged Leaking Sunroof Defect).

### E.    UNJUST ENRICHMENT CLAIM (Count Eleven)

In Count Eleven, Plaintiffs claim GM "has unjustly benefitted and been enriched by refusing to honor and abide by its Bumper-to-Bumper [i.e., express] and Cadillac Shield warranties with regard to the Leaking Sunroof Defect in the Class Vehicles."

GM says the Court should dismiss Plaintiffs' unjust enrichment claim because: (1) the "Cadillac Shield" is not a warranty; (2) GM did not fail to honor Plaintiffs' warranties; their warranties expired; and (3) a valid contract – i.e., the express warranty – governs the parties' dispute.  The Court agrees.

As set forth above, the Cadillac Shield is not a warranty, and GM's denial of coverage under Plaintiffs' expired warranties was not unlawful or a violation of GM's

express warranty.  Furthermore, as the cases cited by GM demonstrate [*see* ECF No. 14, PageID.629-31; ECF No. 16, PageID.858], because an express warranty governs the subject matter at issue, and GM does not dispute the warranty's existence or general validity, Plaintiffs' unjust enrichment claims must be dismissed.

The Court GRANTS GM's motion to dismiss Plaintiffs' unjust enrichment claims and DISMISSES Count Eleven of the complaint.

### F.      DECLARATORY RELIEF CLAIM (Count Twelve)

In Count Twelve – a claim for declaratory relief – Plaintiffs seek: (1) a declaration "of their and [GM's] rights and duties"; and (2) a declaration that "the Leaking Sunroof [Defect] on the Class Vehicles are covered by [GM's] express warranty which [GM] should repair and/or replace at no cost to Plaintiffs or the class members."

Plaintiffs' requests are denied because they are derivative of their unsuccessful substantive claims.  *See Int'l Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997) ("A request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred.").  Indeed, as discussed above, the express warranty does not require GM to cover the Leaking Sunroof Defect after the warranty period expires.  And, with respect to the one surviving claim under § 349, the Court addressed Plaintiffs' request for injunctive relief above.  Plaintiffs are not entitled to the second declaration they seek.

Moreover, Plaintiffs' request for a declaration concerning the parties' rights and duties is moot and/or Plaintiffs lack standing to assert such a claim; they fail to show how declaring their rights concerning their cars' formerly leaking sunroofs and their expired warranties would provide meaningful relief in light of the dismissal of their

derivative substantive claims. *See Poole v. Fed. Nat'l Mortg. Ass'n*, No. 15-CV-1261, 2016 WL 3085765, at *4 (W.D. Mich. June 2, 2016) (to obtain declaratory relief, a plaintiff must show "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" (citations and quotation marks omitted)); *Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F. Supp. 2d 837, 846 (E.D. Mich. 2003) ("The [Declaratory Judgment] Act provides only that courts 'may' hear declaratory actions, rather than 'shall' hear declaratory actions. The granting of a declaratory judgment rests in the sound discretion of the trial court.").

GM's motion to dismiss Plaintiffs' declaratory relief claim is GRANTED. Count Twelve is DISMISSED.

### G. REQUEST TO FILE AN AMENDED COMPLAINT

Over ten times in the body of their response, Plaintiffs request to file an amended complaint to cure any deficiencies and/or assert additional claims. Then, for good measure, Plaintiffs include a separate section at the end of their response arguing that they should be granted leave to amend under Rule 15.

As Plaintiffs frequently point out in their response, Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). While this Court certainly observes Rule 15's mandate to freely give leave to amend, justice does not require allowing Plaintiffs to amend in this instance.

Considering their repeated requests to amend, it is clear that Plaintiffs were on notice of the deficiencies in their complaint. However, rather than amending the complaint as a matter of right – *see* Rule 15 (a)(1)(B) ("A party may amend its pleading

once as a matter of course within: . . . 21 days after service of a motion under Rule 12(b). . . .") – Plaintiffs opted to proceed with their complaint as pled and instead summarily request leave to amend in its response, without justifying such request.

Requesting to amend the complaint in a response brief is not proper. *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) ("Both because the plaintiffs did not present an adequate motion and because they did not attach a copy of their amended complaint, the district court did not abuse its discretion in refusing to allow the plaintiffs to amend their complaint based on the final sentence of the plaintiffs' memorandum in opposition."); *Louisiana Sch. Employees' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) ("A request for leave to amend[,] 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'" (citation omitted)).

Moreover, the Court finds that any amendment would be futile because: (1) GM was not required to provide coverage under Plaintiffs' expired warranties; (2) contrary to their assertion, Plaintiffs fail to allege necessary elements of common law fraudulent concealment claims, including the time and place/when and where of alleged omissions and that GM had a duty to disclose; and (3) Plaintiffs fail to rebut GM's arguments that implied warranty claims under the relevant state laws are barred for several reasons, including lack of privity, expiration of the statute of limitation period under U.C.C. § 2-725, and failure to allege that the SRXs were unmerchantable at the time of sale.

Justice does not require granting Plaintiffs leave to amend. Accordingly, the Court declines Plaintiffs' request to file an amended complaint.

**V.     CONCLUSION**

As set forth above, GM's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

The Court **DISMISSES** all of Plaintiffs' claims with prejudice – other than the claim under N.Y. Gen. Bus. Law § 349.  The § 349 claim survives only to the extent described above, *see supra* Sections IV(D)(5)(a) and (b).

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  September 27, 2019